H&R Block Eastern Enterprises, Inc.,
Plaintiff-Appellant,†

v.

Mary Swenson, Francine J. Sherbert, Tracy A.
Hodson, Sally K. Stelloh, Lynette M. Guentz and
Gerald A. Niedfeldt, Defendants-Respondents.

Court of Appeals

*No. 2006AP1210. Submitted on briefs November 7, 2006.
—Decided December 20, 2007.*

2008 WI App 3

(Also reported in 745 N.W.2d 421.)

† Petition to review filed.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Sharon Mollman-Elliott* and *Elizabeth Erickson Pevehouse* of *Foley & Lardner LLP,* Madison.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Thomas L. Horvath* of *Hale, Skemp, Hanson, Skemp & Sleik,* La Crosse.

Before Higginbotham, P.J., Dykman and Vergeront, JJ.

¶ 1. VERGERONT, J. H&R Block Eastern Enterprises, Inc. appeals the circuit court's order on summary judgment dismissing its claims against former employees for breach of noncompetition and nonsolicitation clauses in their employment contracts. We conclude, based on the undisputed facts, that the provision extending the time period in each of the clauses "by any period(s) of violations" is unreasonable and renders both clauses entirely void under WIS. STAT. § 103.465 (2005–06).[1] The circuit court therefore properly dismissed the breach of contract claim against all the former employees and the related tortious-interference-with-contract claims against two of them.

¶ 2. H&R Block also contends the circuit court erred in denying its motion for summary judgment on the former employees' counterclaim alleging a violation

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

of privacy under WIS. STAT. § 995.50.[2] H&R Block asserts that the statute requires that it intentionally use their names for business purposes without their written consent; according to H&R Block, its use of their names was inadvertent and therefore the requisite intent is lacking. We conclude that, even if H&R Block's construction of the statute is correct—an issue we do not decide—the court correctly denied the motion because there were reasonable conflicting inferences regarding H&R Block's intent.

¶ 3. Accordingly, we affirm the order dismissing H&R Block's claims, the order denying summary judgment on the former employees' counterclaim, and the judgment entered on the counterclaim.

## BACKGROUND

¶ 4. Mary Swenson, Francine Sherbert, Tracy Hodson, Sally Stelloh, Lynette Guentz, and Gerald Niedfeldt were employed by H&R Block as tax preparers in La Crosse, Wisconsin. (We will refer to them collectively as "the former employees.") Their employment contracts each contained the following clauses:

> 11. Noncompetition Covenant. Associate covenants that for two (2) years following the voluntary or involuntary termination of Associate's employment (such period to be extended by any period(s) of violation), Associate shall not, directly or indirectly, provide any of the following services to any of the Company's Clients:[3]

---

[2] At the time the complaint was filed, WIS. STAT. § 995.50 was numbered WIS. STAT. § 895.50. It was renumbered by 2005 Wis. Act 155, § 51, effective April 5, 2006. We use the current number of the statute.

[3] For purposes of both clauses, "Company Clients" are defined as:

395

(1) prepare tax returns, (2) file tax returns electronically, or (3) provide bookkeeping or any other alternative or additional service that the Company provides within the Associate's district of employment.

12. Nonsolicitation Covenant. Associate covenants that for two (2) years following the voluntary or involuntary termination of Associate's employment (such period to be extended by any period(s) of violation), Associate shall not directly or indirectly solicit or divert the Company's Clients or otherwise interfere with the Company's continuing relationships with its clients. Company Clients are those defined in Section 11.

(Footnote added.)

¶ 5. In 2004, the former employees had each been working for H&R Block for periods ranging from ten to more than twenty-five years. The employment of Hodson, Niedfeldt, and Stelloh with H&R Block ended in April 2004 and the employment of the other three ended in November 2004. Swenson and Sherbert began a new business in December 2004, known as "King Street Tax & Bookkeeping,"[4] and hired the other four employees.

¶ 6. H&R Block filed this action in late December 2004. The amended complaint alleges that all the

(i) every person or entity whose federal or state tax return was prepared or electronically transmitted by Associate, or for whom Associate provided bookkeeping or other alternative or additional services, during the 2003 or 2004 calendar year, and (ii) every person or entity whose federal or state tax return was prepared or electronically transmitted by the Company or for whom the Company provided bookkeeping or other alternative or additional services, within the Associate's district of employment during the 2003 or 2004 calendar year and with whom Associate became acquainted by reason of access, knowledge or information gained while employed by the Company . . . .

[4] The record uses both "King Street Tax and Bookkeeping" and "King Street Tax & Bookkeeping."

former employees breached the restrictive clauses in their contracts and Swenson and Sherbert tortiously interfered with those clauses in the contracts of the other four employees. The amended complaint seeks injunctive relief and damages. The former employees filed a counterclaim alleging that H&R Block continued to use their names for trade purposes without their permission in violation of their right to privacy under Wis. Stat. § 995.50(2)(b).[5]

¶ 7. After the circuit court denied H&R Block's motion for a temporary restraining order, H&R Block moved for summary judgment on its claims and on the counterclaim. The former employees moved for summary judgment on H&R Block's claims, contending that the restrictive clauses were overbroad on a number of grounds and therefore unenforceable under Wis. Stat. § 103.465. The invalidity of these clauses, they contended, required dismissal of both the breach of contract and the tortious interference claims. As to their counterclaim for invasion of privacy, the former employees contended there were disputed issues of fact that precluded summary judgment.

¶ 8. The circuit court granted summary judgment in favor of the former employees on H&R Block's claims and dismissed those claims. The court concluded that the restrictive clauses were invalid, primarily because of the duration of the restraint. The court stated that a two-year limitation was more than necessary to protect H&R Block's interests; with the extension permitted in addition to the two years, the duration restriction was plainly invalid. The court also questioned the inclusion

---

[5] The former employees also alleged a counterclaim for defamation. This was dismissed by the circuit court and is not at issue on this appeal.

of bookkeeping in the activities restrained and the breadth of the territory for purposes of defining "company clients." *See* footnote 3.

¶ 9. The circuit court did not grant H&R Block's motion for summary judgment on the invasion of privacy counterclaim, and that issue was tried to the court. The court determined H&R Block had invaded the employees' right to privacy under WIS. STAT. § 995.50(2)(b) by using their names without their permission to solicit business and determined their compensatory damages to be $1,001.10.

## DISCUSSION

¶ 10. On appeal, H&R Block contends it is entitled to summary judgment on its claims, which concern the restrictive clauses in the employment contracts, and on the invasion of privacy counterclaim.

¶ 11. We review a grant of summary judgment by applying the same methodology as the circuit court, and our review is de novo. *Pinter v. American Family Mut. Ins. Co.*, 2000 WI 75, ¶ 12, 236 Wis. 2d 137, 613 N.W.2d 110. A party is entitled to summary judgment when there are no disputed issues of material fact and that party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). In deciding whether there are factual disputes, the circuit court and the reviewing court consider whether more than one reasonable inference may be drawn from undisputed facts; if so, the competing reasonable inferences may constitute genuine issues of material fact. *Hennekens v. Hoerl*, 160 Wis. 2d 144, 162, 465 N.W.2d 812 (1991). We draw all reasonable inferences from the evidence in favor of the nonmoving party. *Grams v. Boss*, 97 Wis. 2d 332, 339, 294 N.W.2d 473 (1980). Whether an inference is reasonable and

whether more than one reasonable inference may be drawn are questions of law. *Hennekens*, 160 Wis. 2d at 162.

## I. H&R Block's Claims—Validity of the Restrictive Clauses

¶ 12. The issue of the validity of the restrictive clauses in the employees' contracts involves the construction and application of Wis. Stat. § 103.465 in light of existing case law. Section 103.465 provides:

> A covenant by an assistant, servant or agent not to compete with his or her employer or principal during the term of the employment or agency, or after the termination of that employment or agency, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any covenant, described in this subsection, imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint.

¶ 13. This statute expresses a strong public policy against the enforcement of unreasonable trade restraints on employees. *Tatge v. Chambers & Owen, Inc.*, 219 Wis. 2d 99, 114–15, 579 N.W.2d 217 (1998). In order to be enforceable, a contract provision governed by this statute must: (1) be necessary to protect the employer; (2) provide a reasonable time limit; (3) provide a reasonable territorial limit; (4) not be harsh or oppressive to the employee; and (5) not be contrary to public policy. *Heyde Cos., Inc. v. Dove Healthcare, LLC*, 2002 WI 131, ¶ 16, 258 Wis. 2d 28, 654 N.W.2d 830 (citations omitted). Because "a restraint on trade[, where] tolerated . . . is permitted only to the extent

absolutely necessary to afford reasonable protection[,]" the time and territorial limitations must be no greater than necessary to afford that protection. *Gary Van Zeeland Talent, Inc. v. Sandas*, 84 Wis. 2d 202, 218, 267 N.W.2d 242 (1978).

¶ 14. In examining restrictive covenants, we apply the following canons of construction: (1) they are prima facie suspect; (2) they must withstand close scrutiny to pass legal muster as being reasonable; (3) they will not be construed to extend beyond their proper import or further than the language of the contract absolutely requires; and (4) they are to be construed in favor of the employee. *Heyde*, 258 Wis. 2d 28, ¶ 16.

¶ 15. When an employer's customers or clients regularly deal with a particular employee, the employer's interest in protecting its stock of customers when that employee leaves may be a legitimate interest that justifies a reasonable restraint on the employee. *Chuck Wagon Catering, Inc. v. Raduege*, 88 Wis. 2d 740, 751–54, 277 N.W.2d 787 (1979). The customer goodwill that comes from a positive relationship between a customer and the employee with whom the customer regularly deals is a valuable asset of the employer's business, and, for some businesses, may be the most important asset. *Id.* at 751–52. The purpose of a time restriction in this context is to give the employer a reasonable chance to keep the customers. *Lakeside Oil Co. v. Slutsky*, 8 Wis. 2d 157, 164–65, 98 N.W.2d 415 (1959).

¶ 16. H&R Block has presented submissions showing that its tax professionals (the position held by the former employees) have well-developed relationships with H&R Block clients, many of whom have returned year after year to the same tax professional, and that

H&R Block encourages clients to return to the same tax professional each year. According to these submissions, virtually all of the contact a client has with H&R Block is through the tax professionals. For purposes of this appeal, we assume these submissions establish that H&R Block has a legitimate interest in protecting its client base with reasonable restrictions on tax professionals who leave its employment. The issue then becomes whether the restrictions it has placed on the former employees to protect this interest are necessary and are reasonable in duration and territory.[6]

¶ 17. Although the parties debate the necessity and reasonableness of the restrictive clauses on a number of grounds, we address only the issue of the reasonableness of the duration restriction in both clauses. We assume without deciding that the two-year period is reasonable and we focus on the extension of the two-year period "by any period(s) of violation."[7]

¶ 18. H&R Block argues that this extension provision is reasonable because the effect is to restrain the

[6] If a restraint on an employee takes the form of a restriction on soliciting or serving the employer's customers, the territorial limitation referred to in WIS. STAT. § 103.465 need not always be expressed in geographic terms. *Rollins Burdick Hunter of Wisconsin, Inc. v. Hamilton*, 101 Wis. 2d 460, 465–66, 304 N.W.2d 752 (1981). In the proper case a "limitation expressed in terms of particular clients or customers more closely approximates the area of the employer's vulnerability to unfair competition by a former employee and does not deprive the employee of legitimate competitive opportunities to which he is entitled." *Id.* at 466 (citations omitted).

[7] On June 2, 2007, we certified this case to the supreme court on the issue of whether the clauses are reasonable with respect to duration given that the time period is "extended by any period(s) of violation." Certification was denied on September 10, 2007.

former employees for a total of only two years, and if two years is reasonable, then the extension for a violation to make up a total of two years is reasonable as well. In their view "a one-day violation leads to a one-day extension, a one-week violation to a one week extension." The former employees respond that the extension provision is unreasonable because it could extend the duration restriction indefinitely. They construe the provision to mean that if, in the twenty-second month after leaving H&R Block, an employee prepared a tax return for a company client, the time period would be extended for another two years, making the total period of restraint forty-six months.

¶ 19. We conclude the extension provision makes the duration of the restraints unreasonable for two independent reasons.[8] First, if we accept H&R Block's proposed construction, we do not understand how this provision is to be applied in the context of the two restrictive clauses here, which deal with providing services to company clients and soliciting those clients. What constitutes a "one-day" violation? Is it any day in which there is any contact with a company client for whom one of the listed services is being provided? Does the violation then extend until the service is completed for that client? If there are contacts with different company clients on one day for the purposes of providing the listed services does that count as a one day violation, the same as if there were contact with only one company client in a day? These questions, unanswered by the contract terms, mean that a former

[8] There may be additional grounds for concluding the extension provision makes the duration unreasonable, but it is unnecessary to discuss more than these two.

employee cannot tell from the terms of his or her contract how long the extension will be for particular conduct in violation of the clauses.

¶ 20. Second, there may be legitimate disputes between a former employee and H&R Block over whether particular conduct violates the clauses. An employee will not know until the dispute is resolved by a court whether the conduct is or is not a violation. Only then will the employee know if there is an extension and how long it is. The effect of the extension provision thus makes the duration of the restraint not a fixed and definite time period but a time period that is contingent upon outcomes the employee cannot predict.

¶ 21. H&R Block refers to cases from other jurisdictions in which courts have extended the time periods in noncompete covenants as part of the equitable relief awarded after a breach has been determined. *See, e.g., JAK Prods., Inc. v. Wiza*, 986 F.2d 1080, 1090 (7th Cir. 1993); *Overholt Crop Ins. Serv. Co. v. Travis*, 941 F.2d 1361, 1372 (8th Cir. 1991); *Thermatool Corp. v. Borzym*, 575 N.W.2d 334, 337–39 (Mich.Ct.App. 1998) (concluding that in appropriate circumstances a covenant may be extended beyond its expiration date, but that the circuit court erred in doing so in this case). H&R Block argues that, if extension of the time period is appropriate equitable relief, then its inclusion in the contract to define the duration of the restrictions is necessarily valid.

¶ 22. We do not agree with this reasoning. Whether the length of a time period in a restrictive covenant is reasonable is a distinct issue from whether an extension of the time period is necessary to provide a remedy to the employer after a breach has been determined. The former determination focuses on the business of the employer, the interest it seeks to protect, and

403

the position of the employee. *See Lakeside Oil Co.,* 8 Wis. 2d at 164–65. The latter determination, in those jurisdictions that allow this remedy, is a matter for the court's discretion; and the court takes into account factors such as the circumstances of the breach, the effect on the employer, and the inadequacy of monetary damages. *See, e.g., Overholt,* 941 F.2d at 1372; *Thermatool,* 575 N.W.2d at 337–38. An employer is by no means entitled to an extension simply because there has been a breach.

¶ 23. We conclude the extension provision in both the noncompetition and the nonsolicitation clauses is unreasonable and renders the two-year time period in each clause unreasonable. Because this restraint in each clause is unreasonable, each clause is void and unenforceable even if each is otherwise reasonable. WIS. STAT. § 103.465; *see also Heyde,* 258 Wis. 2d 28, ¶ 11. Therefore, the circuit court properly dismissed on summary judgment H&R Block's breach of contract claim, which is based on those clauses.

¶ 24. H&R Block implicitly concedes that, if the two restrictive clauses are void and unenforceable, its claim against Swenson and Sherbert for tortious interference fails. Therefore, the circuit court properly dismissed this claim on summary judgment.

II. Counterclaim—Invasion of Privacy

¶ 25. H&R Block contends the circuit court erred in not granting summary judgment in its favor on the invasion of privacy counterclaim. H&R Block's position is that WIS. STAT. § 995.50(2)(b) requires an intentional use of a person's name for purposes of trade without written consent. According to H&R Block, it is undisputed that use of the employees' names was inadvertent and therefore it did not have the requisite intent.

¶ 26. WISCONSIN STAT. § 995.50(2)(b) provides:

> (2) In this section, "invasion of privacy" means any of the following:
>
> . . . .
>
> (b) The use, for advertising purposes or for purposes of trade, of the name, portrait or picture of any living person, without having first obtained the written consent of the person or, if the person is a minor, of his or her parent or guardian.

¶ 27. H&R Block submitted two affidavits with attached exhibits in support of its motion for summary judgment on the counterclaim.[9] The affidavit of Kathy Krueger, district manager for the La Crosse district of H&R Block, averred the following. Prior to the 2005 tax season, the tax professional who had served a particular client in the prior tax season, or another H&R Block employee on behalf of that tax professional, would call the client and ask if the client wanted to schedule an appointment with the tax professional for the new tax season. From late December 2004 to mid-February 2005, H&R Block hired an outside firm to make these calls. After mid-February she assigned H&R Block employees the task of calling the former employees' 2004 clients to schedule appointments and instructed the H&R Block employees not to mention the former employees unless asked, and if asked, to say only that

---

[9] H&R Block cites to trial testimony, as well as to its summary judgment submissions, without differentiating between the two. However, only the summary judgment submissions are relevant to the question whether the court properly denied summary judgment. Therefore, in analyzing the court's denial of the summary judgment motion, we do not consider the trial testimony.

they were no longer with the company. Attached to Krueger's affidavit were identical letters she sent to Swenson and Sherbert, each dated November 23, 2004. Each letter states the employee's termination date is November 23, 2004, reminds the employee of the restrictive clauses in the employment contract, and informs the employee that H&R Block "will take legal action if necessary to protect its confidential information and valued client relationships."

¶ 28. In the second affidavit, Sarah McElwee, vice president, Service Center for H&R Block, avers as follows. The outside vendor who made the calls to the clients from the 2004 tax season to thank them for their business and ask if they wanted to make an appointment for the 2005 season with their tax professional used a script that directed the caller to say that he or she "was calling on behalf of the tax professional who previously served the client." The outside vendor used H&R Block's customer data base to make the calls, which included the name of the tax professional who served each customer the prior year. This customer data base had not been updated to reflect employee turnover.

> As a result of this oversight, [the vendor] called clients and stated they were calling "on behalf of" [the defendant employees] .... The use of the words "on behalf of" in making the phone calls to clients whose tax professional were not returning to H&R Block for the 2005 tax season, including the clients of the defendants in this case, was not intentional.

¶ 29. The former employees opposed summary judgment on this counterclaim. They argued, first, that there were competing reasonable inferences from the facts whether the use of their names by H&R Block to secure the return of their clients was inadvertent. In the

alternative, they argued that WIS. STAT. § 995.50(2)(b) does not recognize a defense of negligence or inadvertence but requires only that H&R Block use their names without their written permission in order to secure business, and the undisputed facts establish that they did so.

¶ 30. It is not clear from the record why the court denied H&R Block's motion for summary judgment on the counterclaim. However, because our review of summary judgment is de novo, we may review the court's denial of the motion even though we are uncertain of its reason.

¶ 31. We do not decide the parties' debate over the proper construction of WIS. STAT. § 995.50(2)(b) because we conclude that, even if the statute imposes no liability if the use of the names is inadvertent, there are conflicting reasonable inferences on this issue.[10] It is reasonable to infer the following from Krueger's and McElwee's affidavits. Krueger knew in late November 2004 that Swenson and Sherbert were no longer with H&R Block and was concerned about whether they would comply with the noncompete and nonsolicitation clauses; she knew the other four employees had left earlier in the year; she knew that an outside vendor was going to be making calls to clients from the customer data base on behalf of the tax professionals who had served them in 2004; and she knew the six former employees' names would be listed as the tax professionals for the clients they served in 2004 unless their

---

[10] It is also unnecessary for us to decide what it means for a corporation to do something inadvertently or without a specific intent.

names were removed from the data base. It is undisputed that their names were not removed and that calls were made on their behalf. There are no details provided in either affidavit about how this occurred; there is only the conclusory "oversight" in McElwee's affidavit. It is reasonable to infer that calling the 2004 clients of the six former employees and using their names to schedule appointments for the 2005 tax season would benefit H&R Block because the clients would appear for the appointment and then likely be willing to be served by someone else. Based on these reasonable inferences and the undisputed facts, a reasonable fact-finder could infer that H&R Block intended the outside vendor to make calls on behalf of the six employees to their 2004 clients.

¶ 32. We do not agree with H&R Block's implicit assumption that these are not reasonable inferences because McElwee's affidavit describes the inclusion of the six employees names as the result of an "oversight" and avers that "use of the words 'on behalf of . . .' was not intentional." As already noted, there are no specific facts to support the conclusory "oversight." There are also no specific facts asserted in McElwee's affidavit that provide a basis for inferring that she had any firsthand knowledge about the intent or the motivation of the persons who provided the customer data base to the vendor. There is, in short, nothing in McElwee's affidavit that makes the inferences favoring the former employees unreasonable.[11]

---

[11] We do not address whether McElwee's affidavit meets the requirements of WIS. STAT. § 802.08(3) that affidavits must "be made on personal knowledge and shall set forth such evidentiary facts as would be admissible in evidence" because the former employees do not raise this issue.

¶ 33. It is true that Krueger's affidavit avers that after mid-February 2005 she had H&R Block employees, rather than the outside vendor, call the former employees' 2004 clients to schedule appointments and she instructed the H&R Block employees not to mention the former employees unless asked; if asked they were to say only that the former employees were no longer with the company. Because the counterclaim alleging an invasion of privacy was filed on January 28, 2005, one might reasonably infer that the counterclaim was the first Krueger knew of the calls using the former employees' names and, soon after she learned, she corrected the problem. On the other hand, it is also reasonable to infer that she changed the practice only because the former employees had learned of it and were asserting a claim based on it.

■

¶ 34. We also take into account that, generally, "the subjective intent of an individual, where it is dispositive of the action, is an ultimate question of fact, and should ordinarily be determined by the trier of fact." *Gouger v. Hardtke*, 167 Wis. 2d 504, 516–17, 482 N.W.2d 84 (1992).

> Where an individual's state of mind is at issue, and the party opposing the motion for summary judgment shows facts which cast doubt upon the affiant's credibility, the trier of fact must be allowed to evaluate the individual's testimony in light of the credibility of the individual and other circumstantial evidence.

*Id.* at 517. Of course, even when intent is at issue, summary judgment is appropriate if all facts and reasonable inferences from the facts lead to only one conclusion. *See N.N. v. Moraine Mut. Ins. Co.*, 153

Wis. 2d 84, 96, 450 N.W.2d 445 (1990). However, we are satisfied that is not the case here.

¶ 35. We recognize that in this case the facts from which reasonable inferences may be drawn in the former employees' favor are set forth in H&R Block's affidavits. That may not be typical, but there is no requirement that the party opposing summary judgment present its own submissions rather than relying on favorable reasonable inferences from the moving party's submissions. The moving party has the burden to establish the absence of a disputed issue as to all material facts. *Grams*, 97 Wis. 2d at 338. It is only if the moving party's submissions establish that the undisputed facts, including all reasonable inferences from those facts, entitle it to summary judgment, that we need to look to the submissions of the opposing party. *See id.* at 338–39.

¶ 36. We conclude that there are genuine issues of disputed fact that must be resolved in order to determine whether H&R Block's use of the former employees' names was inadvertent. Therefore, even assuming H&R Block is not liable under Wis. Stat. § 995.50(2)(b) if the use was inadvertent—an issue we do not decide—it was not entitled to summary judgment.

¶ 37. H&R Block asserts in a cursory manner that there was no evidence of its intent to use the names for a business purpose at the trial before the court and that the court did not find intent but nonetheless found a violation of the statute. However, H&R Block does not develop an argument that is separate from its summary judgment argument to show that the circuit court's determination after the trial was in error. Notably, there is no reference in its briefs to our standard of review of a circuit court's decision upon a trial to the

court. We also observe that it is not clear to us that the circuit court did not find intent.[12] In the absence of a separate developed argument on circuit court error based on the trial of the counterclaim, we address only the denial of summary judgment.

## CONCLUSION

¶ 38. We conclude the circuit court properly granted summary judgment dismissing H&R Block's claims against the former employees and properly denied H&R Block summary judgment on the counterclaim. Accordingly, we affirm.

*By the Court.*—Judgment affirmed.

---

[12] The circuit court found that H&R Block did use the former employees' names without their permission "to solicit business for [H&R Block]."