TECHWORKS, LLC, Plaintiff-Appellant,†

v.

David M. WILLE, Red Anvil, LLC and
Patrick Dolan, Defendants-Respondents.†

Court of Appeals

*No. 2008AP1702. Oral argument March 3, 2009.
—Decided March 31, 2009.*

2009 WI App 101

(Also reported in 770 N.W.2d 727.)

† Petition to review and petition for cross review are both
denied 11/3/09. Abrahamson, C.J., dissents.

488

491

On behalf of the plaintiff-appellant,the cause was submitted on the briefs of *Sean Lanphier* of *Mallery & Zimmerman, S.C.*, Milwaukee. There was oral argument by *Sean Lanphier*.

On behalf of defendant-respondent *David M. Wille*, the cause was submitted on the brief of *Bradden C. Backer* of *Friebert, Finerty & St. John, S.C.*, Milwaukee. There was oral argument by *Bradden C. Backer*.

On behalf of the defendant-respondent *Red Anvil, Inc.*, the cause was submitted on the brief of *Randall L. Nash* of *O'Neil, Cannon, Hollman, DeJong S.C.*, Milwaukee. There was oral argument by *Randall L. Nash*.

On behalf of the defendant-respondent *Patrick Dolan*, the cause was submitted on the brief of *Patrick J. Knight* of *Gimbel, Reilly, Guerin & Brown*, Milwaukee. There was oral argument by *Patrick J. Knight*.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. FINE, J. Techworks, LLC, appeals the circuit court's order dismissing on summary judgment Techworks's claims against David M. Wille, Red Anvil, LLC, and Patrick Dolan. Techworks's operative complaint asserted that: (1) Wille, a former Techworks employee, breached his non-compete agreement with Techworks by working for Red Anvil, Techworks's competitor; (2) Wille breached his agreement with Techworks not to solicit Techworks's customers; (3) Dolan, a former Techworks employee, breached his non-compete agreement with Techworks by trying to get Techworks's employees "to quit their jobs at Techworks and to join him in a move to Red Anvil"; (4) Wille breached his "duty of loyalty" to Techworks by allegedly "using Techworks' confidential information to compete with Techworks while employed by it"; (5) Dolan and Red Anvil conspired to take Techworks's confidential business information, in violation of Wis. Stat. § 134.01 and Wisconsin's common law; (6) Dolan and Red Anvil tortiously interfered with Techworks's contracts with its employees by trying to get some of those employees to leave Techworks and work for Red Anvil in violation of those employees' non-compete agreements with Techworks; and (7) Wille and Red Anvil tortiously

495

interfered with Techworks's business relationships with its customers. The circuit court held that the non-compete agreement was invalid and that there were no genuine issues of material fact on the other issues so that the defendants were entitled to judgment dismissing Techworks's complaint. We affirm in part and reverse in part.

**I.**

¶ 2. A party is entitled to summary judgment if "there is no genuine issue as to any material fact" and that party "is entitled to a judgment as a matter of law," WIS. STAT. RULE 802.08(2), and may be entitled to summary judgment even though that party did not seek it, RULE 802.08(6) ("If it shall appear to the court that the party against whom a motion for summary judgment is asserted is entitled to a summary judgment, the summary judgment may be awarded to such party even though the party has not moved therefor."). We review *de novo* a circuit court's rulings on summary judgment, and apply the governing standards "just as the trial court applied those standards." *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315–317, 401 N.W.2d 816, 820–821 (1987). A party that has the burden of proof at trial in connection with a claim has the burden to show that there are genuine issues of material fact that require a trial on that claim. *Transportation Ins. Co. v. Hunzinger Constr. Co.,* 179 Wis. 2d 281, 290, 507 N.W.2d 136, 139 (Ct. App. 1993). That burden can be met by reasonable inferences drawn from circumstantial evidence, *Belich v. Szymaszek,* 224 Wis. 2d 419, 424–425, 592 N.W.2d 254, 258 (Ct. App. 1999); *see also H&R Block Eastern Enterprises, Inc. v. Swenson,* 2008 WI App 3, ¶ 31, 307 Wis. 2d 390, 407–408, 745 N.W.2d

421, 429–430, and we examine the parties' submissions in a light most favorable to the party against whom summary judgment is sought, *Johnson v. Rogers Mem'l Hosp., Inc.*, 2005 WI 114, ¶ 30, 283 Wis. 2d 384, 401, 700 N.W.2d 27, 35. We assess Techworks's claims in this light.

## II.

A. *Wille's non-compete agreement.*

¶ 3. A non-compete agreement that restricts the post-employment activities of an employee is governed by WIS. STAT. § 103.465. Section 103.465 provides:

> A covenant by an assistant, servant or agent not to compete with his or her employer or principal during the term of the employment or agency, or after the termination of that employment or agency, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any covenant, described in this subsection, imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint.

Under this section, a non-compete agreement is not enforceable unless it satisfies five elements. It "must: (1) be necessary for the protection of the employer or principal; (2) provide a reasonable time restriction; (3) provide a reasonable territorial limit; (4) not be harsh or oppressive to the employee; and (5) not be contrary to public policy." *General Medical Corp. v. Kobs*, 179 Wis. 2d 422, 429, 507 N.W.2d 381, 384 (Ct. App. 1993). The absence of a geographic "territorial limit" does not for that reason alone invalidate a non-

compete agreement. *Rollins Burdick Hunter of Wisconsin, Inc. v. Hamilton*, 101 Wis. 2d 460, 464, 467, 304 N.W.2d 752, 754, 755 (1981). Further, a two-year non-compete limitation is within the ambit of reasonableness. *Id.*, 101 Wis. 2d at 462, 471, 304 N.W.2d at 753, 757 (two-year restriction not *per se* invalid); *Lakeside Oil Co. v. Slutsky*, 8 Wis. 2d 157, 165, 98 N.W.2d 415, 420 (1959) ("Two years under the facts of this case cannot be held to be an unreasonable length of time in which to allow the plaintiff to protect his business from the defendant.").

¶ 4. Whether a non-compete agreement is reasonable depends on " 'the totality of the facts and circumstances.' " *General Medical Corp.*, 179 Wis. 2d at 434, 507 N.W.2d at 386 (quoted source omitted). This presents "a question of law to be resolved on the basis of factual findings," *NBZ, Inc. v. Pilarksi*, 185 Wis. 2d 827, 840, 520 N.W.2d 93, 97 (Ct. App. 1994), subject to our *de novo* review, *Streiff v. American Family Mut. Ins. Co.*, 118 Wis. 2d 602, 603–604 & n.1, 348 N.W.2d 505, 507 & n.1 (1984); *Fields Foundation, Ltd. v. Christensen*, 103 Wis. 2d 465, 473, 309 N.W.2d 125, 130 (Ct. App. 1981). Further, the employer has the burden to prove that a non-compete agreement is reasonable, *NBZ, Inc.*, 185 Wis. 2d at 840, 520 N.W.2d at 97, and the agreement's restrictions "must withstand close scrutiny to pass legal muster as being reasonable; they will not be construed to extend beyond their proper import or further than the language of the contract absolutely requires; [and] they are to be construed in favor of the employee," *Streiff*, 118 Wis. 2d at 611, 348 N.W.2d at 510.

¶ 5. Techworks and Red Anvil both provide information-technology support services for other businesses. Wille worked for Techworks as an information-

technology engineer until he resigned effective February 27, 2007, *via* a notice dated February 19, 2007. He started to work for Red Anvil as an information-technology engineer on February 28, 2007. He left Red Anvil's employ in August of 2007 and now lives in Florida.

¶ 6. Wille's job with both Techworks and Red Anvil was to help their respective customers with their information-technology and computer-related problems. In October of 2005, he signed an "Employee Agreement Regarding Confidentiality, Non-solicitation, Noncompetition and Intellectual Property" in connection with his employment with Techworks. (Uppercasing omitted.) As material, the non-compete clause reads:

> So long as the Employee is employed by Employer and continuing thereafter until ... the second (2nd) anniversary subsequent to the date of the termination of his/her employment with Employer (the "**Restricted Period**"), Employee will not engage directly or indirectly (as an owner, joint venture, partner, member, shareholder, consultant, employee, independent contractor or otherwise): (i) *in any activity with a Restricted Customer located within the Restricted Territory that competes with the then-existing Business of Employer, or* (ii) *in any activity with a Restricted Customer wherever located that competes with the then-existing Business of Employer, but only to the extent that Employee has engaged in such activities with the Restricted Customer on behalf of Employer.* "**Restricted Customer**" means a person or entity with whom Employer conducted its Business within two (2) years prior to the termination of Employee's employment with Employer. "**Conducted its Business**" means Employer's provision to a person or entity of its information technology products or services, including the previous provision thereof which Employer continues

to support or is reasonably expected to support. "**Restricted Territory**" means a geographic area comprising a radius of 100 miles from each existing office location of Employer in any direction. "**Within**" the restricted Territory includes providing services from any location for Restricted Customers within the Restricted Territory.

(Bolding and capitalization in original; italics in subparts i and ii added.) Techworks's only office is in Wauwatosa, Wisconsin.

¶ 7. Broken down, the non-compete clause governs the two-year period starting when the employee leaves Techworks, and prevents the former employee during those two years from:

 (1) working for a Techworks competitor "in any activity . . . that competes" with Techworks's information-technology business for (a) any customer with whom Techworks "conducted its Business" during two years before the employee left Techworks's employ, *provided* that (b) the customer is also within one-hundred miles of Wauwatosa; or

 (2) working for a Techworks competitor "in any activity . . . that competes" with Techworks's information-technology business for (a) any customer with whom Techworks "conducted its Business" during two years before the employee left Techworks's employ, *irrespective of geographic boundaries,* (b) *but only if* the employee worked with that customer in the employee's capacity as a Techworks employee during those two years.

Thus, under the non-compete agreement Wille may compete with Techworks's information-technology business except: (1) with respect to customers located within one-hundred miles of Wauwatosa who were

500

Techworks's customers during the two years before Wille left Techworks; or (2) with respect to those Techworks customers whom Wille serviced during those two years.[1] As we have seen, all limitations under the non-compete agreement expired two years after February 27, 2007. We look at the parties' summary-judgment submissions to see if they answer at this stage whether Wille's non-compete agreement is valid under Wis. Stat. § 103.465 or whether there are genuine issues of material fact that need to be resolved before such an assessment may be made. If the non-compete agreement passes muster, then the issue is whether there are genuine issues of material fact as to whether Wille breached that agreement.

i. *Validity of Wille's non-compete agreement.*

¶ 8. The first sub-issue is whether Wille's non-compete agreement with Techworks is valid. The following averments by Don Muehlbauer, Techworks's chief executive officer and founder, in his affidavit submitted to the circuit court in opposition to the defendants' motions for summary judgment were not disputed by any summary-judgment materials submitted by the defendants:

- Techworks gives its customers "full computer support," acting "as a 'virtual [information-technology] department' " for them, by having its engineers work at the customers' sites.

---

[1] Thus, the circuit court's observation in connection with the identical non-compete agreement signed by Dolan when he worked for Techworks that "it literally applies to all activity" is not true.

- "Techworks competes with approximately 500 other companies in the Milwaukee/Waukesha metropolitan area."

- "Techworks has approximately 175 active customers. Of these, approximately 80 are very active, invoiced for services every month."

- "The market of potential customers [for the information-technology services provided by companies like Techworks] in Southeastern Wisconsin is approximately 14,922, per Dunn & Bradstreet. Thus Techworks has 1.17% of the market."

In his deposition, Wille testified that he was hired by Red Anvil even though he disclosed to it his non-compete agreement with Techworks, and that he was able to work for Red Anvil without violating that agreement. In response to Techworks's interrogatories, Red Anvil admitted that it too had non-compete agreements with its engineers that "attempt to restrict the engineer's ability to compete with Red Anvil, or work for a competitor of Red Anvil." Applying these facts and admissions to the standards governing the validity of non-compete agreements, we conclude as a matter of law that Wille's non-compete agreement with Techworks is valid, and thus, under WIS. STAT. RULE 802.08(6), summary judgment should be entered on that issue in favor of Techworks, even though it did not seek that relief.

¶ 9. As we have seen, the first element of whether a non-compete agreement is valid asks if it is "necessary for the protection of the employer." *General Medical Corp.*, 179 Wis. 2d at 429, 507 N.W.2d at 384. By working at the customers' sites in connection with the customers' information-technology and computer problems, information-technology engineers employed by

companies like Techworks develop relationships that would tend to survive a transfer of the engineer's employment. As explained in *Chuck Wagon Catering, Inc. v. Raduege*, 88 Wis. 2d 740, 751–752, 277 N.W.2d 787, 792 (1979):

> The purpose of a covenant restraining an agent from competing with his principal after he leaves his principal's service is to prevent for a time the competitive use of information or contacts gained as a result of that service. *In many businesses the relationship with customers is the most valuable asset of the enterprise.* In recognition of this fact, customer goodwill has been recognized as a property interest in and of itself. *Customer goodwill has value to the extent that a customer knows and feels he can rely upon the salesperson he is dealing with. In many cases a business's agent may be the sole contact customers have with that business.*

(Emphasis added; footnotes omitted.) *See also Gary Van Zeeland Talent, Inc. v. Sandas*, 84 Wis. 2d 202, 215, 267 N.W.2d 242, 249 (1978) ("There are indeed types of professions or occupations which may be considered to be covered by the route sales rationale even though they are not route salesmen in the accepted milkman's sense. Included in this category are such persons as dentists, doctors, lawyers, and accountants."). Service providers like Techworks need to ensure that there is a reasonable period during which their engineers, who develop close business relationships with the customers they service, will not work for either a competitor or a customer, and Red Anvil's use of non-compete agreements with its engineers is evidence of both industry practice and necessity—evidence that was not contradicted by any of the defendants' summary-judgment

503

materials. Since a non-compete agreement is valid if it is "reasonably necessary" to protect "legitimate business interests," *Farm Credit Services of North Central Wisconsin, ACA v. Wysocki*, 2001 WI 51, ¶ 16, 243 Wis. 2d 305, 317, 627 N.W.2d 444, 450, Wille's non-compete agreement with Techworks passes the first element of the five-element test.

¶ 10. The second element of whether a non-compete agreement is valid focuses on the "time restriction" used by the agreement to limit what the former employee may or may not do. Wille's non-compete agreement with Techworks has two time limitations: customers are on the "restricted" list only if they were customers during the two years antedating Wille's departure from Techworks, and the restriction lasts only two years after that departure date. As we have seen, a two-year-forward restriction is within the realm of reasonableness. *Rollins Burdick Hunter of Wisconsin*, 101 Wis. 2d at 462, 471, 304 N.W.2d at 753, 757. Further, the two-year-backward restriction significantly restricts the population of Techworks's customers who are on the no-contact list for two years, and this also is reasonable. *See id.*, 101 Wis. 2d at 462–463, 465–466, 304 N.W.2d at 753, 755 ("The limitation expressed in terms of particular clients or customers more closely approximates the area of the employer's vulnerability to unfair competition by a former employee and does not deprive the employee of legitimate competitive opportunities to which he is entitled."). Thus, this case is significantly different than *Equity Enterprises, Inc. v. Milosch*, 2001 WI App 186, 247 Wis. 2d 172, 633 N.W.2d 662, upon which the defendants rely, because in *Equity Enterprises* the backward restriction extended all the way to 1982, when the employee first started to work for the company, even though he left it in 1997. *Id.*, 2001 WI App 186,

¶¶ 2, 15 n.4, 247 Wis. 2d at 177–178, 186 n.4, 633 N.W.2d at 665–666, 670 n.4. Wille's non-compete agreement with Techworks passes the second element of the five-element test recognized by *General Medical Corp.*, 179 Wis. 2d at 429, 507 N.W.2d at 384 ("time restriction" must be "reasonable").

¶ 11. The third element of whether a non-compete agreement is valid asks if the scope of the non-compete agreement's "territory" is reasonable. Although, as we have seen, only one of the two clauses restricting Wille's post-employment activities has a specific geographical limitation—one-hundred miles from Wauwatosa—this limitation is further restricted by the provision that lets Wille work for any customer that was not a customer of Techworks during two years before Wille left Techworks. This is significant, because, as we have already seen, there need be no geographic limitation if those for whom the former employee cannot work is limited to a specific group of customers. *Rollins Burdick Hunter of Wisconsin*, 101 Wis. 2d at 466, 304 N.W.2d at 755 ("The limitation expressed in terms of particular clients or customers more closely approximates the area of the employer's vulnerability to unfair competition by a former employee and does not deprive the employee of legitimate competitive opportunities to which he is entitled."). In light of the undisputed summary-judgment fact in this case that, as expressed by Muehlbauer's affidavit, "[t]he market of potential customers in Southeastern Wisconsin is approximately 14,922," and Techworks's active customer list was, according to Muehlbauer's affidavit, fewer than two-hundred, the customer-list restriction in the first part of the operative subsection of Wille's non-compete agreement with Techworks passes the

muster of reasonableness; Wille was thus free to compete with Techworks by providing information-technology services to a remaining customer base in Southeastern Wisconsin of more than 14,700!

¶ 12. The second part of the operative subsection of Wille's non-compete agreement with Techworks also passes the muster of reasonableness because although it has no geographic limitation, the restricted list is substantially narrowed because it *only* forbids Wille from working for those customers whom Wille actually serviced during the two years before he left Techworks. "In Wisconsin a covenant is considered reasonable as to territory if, like this covenant, it is limited to the route or customers defendant actually services." *Chuck Wagon Catering*, 88 Wis. 2d at 754, 277 N.W.2d at 793. This is especially true where the market of available customers is so huge, as it is here.

¶ 13. The fourth element of whether a non-compete agreement is valid asks if the non-compete restrictions are "harsh or oppressive to the employee." *General Medical Corp.*, 179 Wis. 2d at 429, 507 N.W.2d at 384. In light of the undisputed summary-judgment materials, the restrictions here are not oppressive or harsh. First, as we have seen, the market of potential customers in Southeastern Wisconsin whom Wille was free to contact is huge—more than 14,700. Second, according to Wille's deposition testimony, Red Anvil hired him despite the non-compete agreement and, according to Wille, he was able to work for Red Anvil while fully complying with the non-compete agreement's restrictions. Thus, the non-compete agreement clears the fourth element.

¶ 14. The fifth element that we must consider under our *de novo* review is whether in light of all the

506

circumstances enforcing the non-compete agreement would violate public policy. *Ibid.* Unlike some hypothetical situations where, for example, enforcement of an otherwise valid non-compete agreement might endanger the public health or safety (as where a physician with special skills in a small community might be prevented from treating patients), there is no public-policy bar to the enforcement of Wille's non-compete agreement with Techworks.

¶ 15. Under our *de novo* summary-judgment review, it is clear that Wille's non-compete agreement with Techworks is valid and enforceable. Nevertheless, Wille contends that the non-compete agreement must fall because of two other clauses in his employment contract with Techworks. First, he points to an arguably invalid open-ended prohibition against the disclosure of "any Confidential Information to any party at any time," except as permitted by circumstances not argued here, and because such restrictions are also subject to WIS. STAT. § 103.465, *see Gary Van Zeeland Talent*, 84 Wis. 2d at 218–219, 267 N.W.2d at 250 (Provision "that the employee will never, without time limitation, disclose the list of customers to any person" is unreasonable under § 103.465.), he argues that the non-compete clause of his employment agreement must accordingly be held invalid.[2] Second, he points to the

---

[2] We say "arguably invalid" because Techworks has not in the summary-judgment Record pointed to any unique qualities the information has that might qualify it for open-ended protection. *See Gary Van Zeeland Talent, Inc. v. Sandas*, 84 Wis. 2d 202, 218–219, 267 N.W.2d 242, 250 (1978); *Nalco Chemical Co. v. Hydro Technologies, Inc.*, 984 F.2d 801, 803 (7th Cir. 1993) (If the confidential-information clause "protects information that does not constitute trade secrets, then the terms

non-solicitation clause of his employment contract with Techworks and argues that it, too, is overbroad and thus the non-compete agreement falls with it. For the reasons discussed below, we disagree.

¶ 16. *Streiff* and *Mutual Service Casualty Insurance Co. v. Brass*, 2001 WI App 92, 242 Wis. 2d 733, 625 N.W.2d 648, dealt with clauses in insurance agents' agreements with their respective insurance-company employers that conditioned receipt of post-termination income on the agents not attempting to take customers from their employers and compete with them once they left their employment. *Streiff*, 118 Wis. 2d at 605–607, 348 N.W.2d at 507–508; *Mutual Service*, 2001 WI App 92, ¶¶ 7–8, 242 Wis. 2d at 738–740, 625 N.W.2d at 652–653. *Streiff* and *Mutual Service* held that the clauses were sufficiently intertwined to make them "indivisible" so that the invalidity of one made them all invalid under Wis. Stat. § 103.465. *Streiff*, 118 Wis. 2d at 611–613, 348 N.W.2d at 510–511; *Mutual Service*, 2001 WI App 92, ¶ 11, 242 Wis. 2d at 742, 625 N.W.2d at 654.[3]

---

of the clause must be reasonable in time and scope to be enforceable.") (applying Wis. Stat. § 103.465). We assume that the open-ended confidential-information restriction is invalid because Techworks has not developed any argument to the contrary. *See League of Women Voters v. Madison Community Foundation*, 2005 WI App 239, ¶ 19, 288 Wis. 2d 128, 140, 707 N.W.2d 285, 291 (Appellant "must present developed arguments if it desires this court to address them."); *Vesely v. Security First Nat'l Bank of Sheboygan Trust Dep't*, 128 Wis. 2d 246, 255 n.5, 381 N.W.2d 593, 598 n.5 (Ct. App. 1985).

[3] After the release of this opinion, the supreme court rejected the interpretation of *Streiff v. American Family Mutual Insurance Co.*, 118 Wis. 2d 602, 348 N.W.2d 505 (1984), by *Mutual Service Casualty Insurance Co. v. Brass*, 2001 WI App 92, 242 Wis. 2d 733, 625 N.W.2d 648:

¶ 17. The confidential-information clause in Wille's contract with Techworks addresses interests other than his non-compete agreement. Significantly, one of the authorities upon which Wille relies, *Nalco Chemical Co. v. Hydro Technologies, Inc.*, 984 F.2d 801, 803–806 (7th Cir. 1993) (applying Wisconsin law), analyzed the claimed breach of a confidential-information clause separately from its analysis of the claimed breach of a non-compete clause. Thus, the confidential-information clause in Wille's contract and his non-compete agreement do not satisfy the intertwined-"indivisibility" test of *Streiff* and *Mutual Service*.

¶ 18. In a separate clause of his employment contract with Techworks, Wille agreed:

> that during the term of [his] employment and for a period of two (2) years thereafter [he] will not directly or indirectly: (i) solicit, or encourage or engage any person or entity other than [Techworks] to solicit or accept Business from any Customer for the purposes of providing services offered by [Techworks] relating to the Business; or (ii) induce or attempt to induce or influence any employee of [Techworks] to terminate [his] employment with [Techworks]; or (iii) use [Techworks] or Customer information or records in the possession of or maintained by [Techworks] and available to [Techworks] only because of [his] position as an

---

We reject the *Brass* court's construction of *Streiff*. We do not construe *Streiff* as announcing a rule that provisions are "intertwined and indivisible because they govern several similar types of activities and establish several time and geographical restraints." *Mutual Serv. Cas. Ins. Co. v. Brass*, 2001 WI App 92, ¶ 11, 242 Wis. 2d 733, 625 N.W.2d 648. We therefore overrule *Brass*'s holding in this regard.

*Star Direct, Inc. v. Dal Pra*, 2009 WI 76, ¶ 78 n.12, ___ Wis. 2d ___, ___ n.12, 767 N.W.2d 898, ___ n.12.

employee of [Techworks] to solicit, or assist others in soliciting, persons who were identified by the information or records for employment or a business relationship.

The word "Customer" is defined by Wille's employment agreement with Techworks as encompassing "persons and businesses" to whom Techworks "provides a 'Virtual IT Department.' " (Italics and bolding omitted.) This provision has two parts: (1) customer solicitation; and (2) employee solicitation. We address the customer-solicitation aspect first because that aspect undeniably addresses the same concerns as does the non-compete agreement.

¶ 19. As we see, the term "Customer" is defined as those to whom Techworks provided information-technology services, and, as we saw, according to the summary-judgment materials, those customers, fewer than 200, make up less than 1.17% of the relevant base of potential information-technology-service customers. Further, consistent with the non-compete agreement, the restriction is good for only the two-year period following Wille's departure from Techworks. Thus, this aspect of the non-solicitation clause passes muster—it is reasonably limited both as to time, *see Rollins Burdick Hunter of Wisconsin*, 101 Wis. 2d at 462, 471, 304 N.W.2d at 753, 757 (a two-year-forward restriction is within the realm of reasonableness), and to the population of those whom Wille may not solicit during those two years, *see id.*, 101 Wis. 2d at 466, 304 N.W.2d at 755. For the reasons already discussed in connection with the non-compete clause, it is also not oppressive to Wille, it reasonably protects Techworks's business interests in connection with its relatively small customer list, and is not contrary to the public interest. *See General Medical Corp.*, 179 Wis. 2d at 429, 507 N.W.2d

at 384 (setting out the five factors discussed earlier in this opinion). Thus, we conclude on our *de novo* review, that the customer-solicitation restriction passes muster under WIS. STAT. § 103.465 and thus does not torpedo Wille's noncompete agreement.

¶ 20. In connection with the two-year restriction on Wille's ability to persuade Techworks's employees to leave Techworks, that restriction, as with the confidential-information clause does not implicate the same concerns as the non-compete agreement. Accordingly, whether it is overbroad or not (and, as noted below, Techworks makes no developed legal argument as to why it is not overbroad), it is not "indivisible" with the non-compete clause under *Streiff* and *Mutual Service* and thus is immaterial as to whether the non-compete clause is valid under WIS. STAT. § 103.465. *See Nalco Chemical Co.*, 984 F.2d at 804–806 (analyzing the claimed breach of a confidential-information clause separately from its analysis of the claimed breach of a non-compete clause).

¶ 21. Based on the foregoing, the non-compete clause is valid and, accordingly, under WIS. STAT. RULE 802.08(6), Techworks is entitled to summary judgment enforcing the non-compete clause in its employment contract with Wille.

ii. *Did Wille breach his non-compete agreement with Techworks?*

¶ 22. The summary judgment materials bearing on whether Wille breached his non-compete agreement with Techworks are contradictory. Thus, Muehlbauer's affidavit avers that while at Red Anvil, "Wille provided services to" at least three customers who were "Restricted Customers" under the non-compete agreement, "Hatch Staffing, Horner Plumbing[,] and Grumman

Butkus." Additionally, Muehlbauer averred that Wille took with him a computer file that had "proprietary information on the set up of" software for TDI Associates, a Techworks customer within the ambit of Wille's non-compete agreement, and, also, that after Wille joined Red Anvil "he asked about a DVD" for another former Techworks customer, Medical Eye Associates. In his answers to Techworks's interrogatories, however, Wille denied that he "provide[d] any professional services while an employee at Red Anvil to any customers that [he] had previously provided services to while an employee of [T]echworks." Wille's interrogatory answers also averred that he "never contacted any customers" of Techworks "for professional reasons" after he left Techworks. Those answers also asserted that he "never worked with any Red Anvil employee to provide professional services to any present or former customers of [T]echworks." Significantly, Wille's deposition testimony, in response to questions by *his* lawyer, was contradictory:

Q Did you provide professional services as an employee of Red Anvil to any customers you had previously provided professional services to while at Techworks?

A Yes.

Q And which customers were those?

A Those were Horner and Hatch.

Q Okay.

A And Grumman Butkus.

Q After your departure from Techworks, did you contact any customers at Techworks for professional reasons?

A Repeat that.

Q After you left Techworks, did you contact any of Techworks' customers for professional reasons?

A No, no.

Wille also testified that he may have believed that the non-compete agreement only applied to Techworks customers with whom he had worked during the one year before he left Techworks.

■■■

¶ 23. Based on the foregoing, there are clearly genuine issues of disputed material fact as to whether Wille violated his non-compete agreement with Techworks. Accordingly, summary judgment on that issue was improper.

B. *Restrictions on solicitation.*

■■■

¶ 24. We have already analyzed the restrictions in Wille's employment contract with Techworks on his solicitation of Techworks's customers and employees and will not repeat that analysis here. As seen, we believe the customer-solicitation subclause passes muster under WIS. STAT. § 103.465. As for the employee-solicitation subclause, Techworks does not develop any argument as to why it is valid. Accordingly, it has not met its burden on the issue. *See League of Women Voters v. Madison Community Foundation*, 2005 WI App 239, ¶ 19, 288 Wis. 2d 128, 140, 707 N.W.2d 285, 291 (Appellant "must present developed arguments if it desires this court to address them."); *Vesely v. Security First Nat'l Bank of Sheboygan Trust Dep't*, 128 Wis. 2d 246, 255 n.5, 381 N.W.2d 593, 598 n.5 (Ct. App. 1985). Accordingly, Wille is entitled to summary judgment on

the non-solicitation-of-employees aspect of his employment contract with Techworks.

C. *Dolan's alleged breach of his non-compete agreement with Techworks.*

¶ 25. As we have seen, Techworks's operative complaint alleged that Dolan, a former Techworks employee, breached his non-compete agreement with Techworks by trying to get Techworks's employees "to quit their jobs at Techworks and to join him in a move to Red Anvil." The circuit court granted summary judgment to Dolan, dismissing Techworks's claims against him. While employed by Techworks, Dolan signed the same non-compete agreement as did Wille. Techworks's briefs on this appeal, however, do not argue that summary judgment granted to Dolan on the non-compete-agreement claim was error. Accordingly, that issue is waived, and we affirm the circuit court's ruling. *See State v. Johnson*, 184 Wis. 2d 324, 344, 516 N.W.2d 463, 470 (Ct. App. 1994) ("On appeal, issues raised but not briefed or argued are deemed abandoned.").

D. *Wille's duty of loyalty.*

¶ 26. Although, as we have also seen, Techworks's operative complaint asserted that Wille breached his "duty of loyalty" to Techworks by allegedly "using Techworks' confidential information to compete with Techworks while employed by it," Techworks's briefs on this appeal also do not argue that summary judgment granted Wille on this claim was error. Accordingly, that issue is waived, and we affirm the circuit court's ruling. *See ibid.*

E. *Alleged conspiracy by Dolan and Red Anvil in connection with Techworks's confidential business information.*

██ ██

¶ 27. Techworks's operative complaint also alleged that Dolan and Red Anvil conspired to take Techworks's confidential business information, in violation of WIS. STAT. § 134.01 and Wisconsin's common-law civil-conspiracy principles.[4] Techworks, however, spends but one page in its main brief on this appeal arguing that there are genuine issues of material fact that preclude summary judgment on its conspiracy claims. Neither that main brief nor Techworks's reply brief set out any legal principles that it contends govern those claims, and do not cite any cases in support of any legal theory. Techworks apparently expects this court to do its work for it. That we will not do; we will not address arguments that are not developed. *League of Women Voters*, 2005 WI App 239, ¶ 19, 288 Wis. 2d at 140, 707 N.W.2d at 291; *Vesely*, 128 Wis. 2d at 255 n.5, 381 N.W.2d at 598 n.5. Accordingly, since on summary judgment the party that has the burden of proof at trial in connection with a claim has the burden to show that there are genuine issues of fact that require a trial on that claim, *Transportation Ins. Co.*, 179 Wis. 2d at 290, 507 N.W.2d at 139, Techworks's contention that the

---

[4] WISCONSIN STAT. § 134.01 provides:

Any 2 or more persons who shall combine, associate, agree, mutually undertake or concert together for the purpose of willfully or maliciously injuring another in his or her reputation, trade, business or profession by any means whatever, or for the purpose of maliciously compelling another to do or perform any act against his or her will, or preventing or hindering another from doing or performing any lawful act shall be punished by imprisonment in the county jail not more than one year or by fine not exceeding $500.

circuit court should not have granted summary judgment dismissing its conspiracy claims fails.

F. *Alleged tortious interference by Dolan and Red Anvil with Techworks's employees.*

¶ 28. As with its contention that summary judgment on its conspiracy claims should not have been granted, Techworks's main brief on this appeal in connection with whether Dolan and Red Anvil tortiously interfered with Techworks's relationship with its employees does not set out any legal principles that it contends govern those claims, and does not cite any cases in support of its legal theory. Further, although its reply brief cites two cases in a desultory insufficiently developed "argument," we do not consider matters argued for the first time in a reply brief because that precludes the respondent from being able to address those arguments. *See Vermont Yogurt Co. v. Blanke Baer Fruit & Flavor Co.*, 107 Wis. 2d 603, 613, 321 N.W.2d 315, 320 (Ct. App. 1982) (A developed argument and supporting citations must be in an appellant's main brief.). Accordingly, we will not address Techworks's contention that summary judgment should not have been granted. *See League of Women Voters*, 2005 WI App 239, ¶ 19, 288 Wis. 2d at 140, 707 N.W.2d at 291; *Transportation Ins. Co.*, 179 Wis. 2d at 290, 507 N.W.2d at 139.

G. *Alleged tortious interference by Wille and Red Anvil with Techworks's business relationships with its customers.*

¶ 29. Techworks's operative complaint also alleged that "Wille and Red Anvil have tortiously inter-

fered with Techworks' contractual relations with its customers." Techworks's briefs on this appeal do not even address this tortious-interference allegation. Accordingly, we do not discuss it. *See Johnson*, 184 Wis. 2d at 344, 516 N.W.2d at 470.

H. *Damages.*

¶ 30. As we have seen, Techworks's claim against Wille for the breach of his non-compete agreement with Techworks survives. The only issue remaining with respect to that claim is, therefore, whether there are sufficient summary-judgment materials supporting Techworks's contention that it was damaged as a result. In his affidavit in opposition to the defendants' motions for summary judgment, Muehlbauer avers that Techworks lost significant sums in connection with Horner, Hatch, Grumman Butkus, TDI Associates, and Medical Eye Associates, customers with respect to which there are genuine issues of material fact as to whether Wille breached his non-compete agreement with Techworks. There is thus sufficient evidence of damages in connection with those customers for trial.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded for trial.

¶ 31. BRENNAN, J. (*dissenting*). I respectfully dissent from that portion of the Majority's opinion granting summary judgment to Techworks on the issue of the validity of the non-compete agreement and on the Majority's remand for trial on the issue of whether David Wille violated the non-compete agreement. I conclude that Techworks has not met its burden of showing that the two-year, look-back provision applicable to former customers, who ceased doing business with Techworks, is reasonable as to time or that it is

necessary to its business. And, because I conclude these provisions are indivisible from the whole non-compete agreement, I conclude that the agreement is invalid and unenforceable against Wille. Accordingly, I would affirm the trial court and grant summary judgment to Wille. I concur with the Majority on all other issues.

## I. Techworks bears the burden of showing the reasonableness of its non-compete agreement.

¶ 32. A non-compete agreement is to be construed in favor of the employee and is generally disfavored in the law. *See Farm Credit Servs. v. Wysocki*, 2000 WI App 124, 237 Wis. 2d 522, 614 N.W.2d 1, *rev'd on other grounds*, 2001 WI 51, 243 Wis. 2d 305, 627 N.W.2d 444. One reason they are so disfavored is based on the unequal bargaining power of the parties to the employment contract. *Gary Van Zeeland Talent, Inc. v. Sandas*, 84 Wis. 2d 202, 219, 267 N.W.2d 242 (1978). A non-compete agreement is subject to the requirements set forth in WIS. STAT. § 103.465, which states that it is unenforceable *unless* the restrictions are *reasonably necessary to protect* the employer. As noted in the Majority opinion, the validity of the non-compete depends on it conforming to five elements. It "must: (1) be necessary for the protection of the employer or principal; (2) provide a reasonable time restriction; (3) provide a reasonable territorial limit; (4) not be harsh or oppressive to the employee; and (5) not be contrary to public policy." *General Med. Corp. v. Kobs*, 179 Wis. 2d 422, 429, 507 N.W.2d 381 (Ct. App. 1993).

¶ 33. As the Majority sets forth so well, the employer has the burden to prove that the non-compete agreement is reasonable. *See NBZ, Inc. v. Pilarski*, 185 Wis. 2d 827, 840, 520 N.W.2d 93 (Ct. App. 1994).

518

Whether a non-compete agreement is reasonable depends on "the totality of the facts and circumstances." *General Med. Corp.*, 179 Wis. 2d at 434 (citation omitted). This presents a question of law to be resolved from the factual findings. *NBZ*, 185 Wis. 2d at 840.

¶ 34. The factual record here consists of the parties' submissions on the defendants' summary judgment motion. As noted by the Majority, at summary judgment, the party that has the burden of proof at trial in connection with a claim has the burden to show that there are genuine issues of material fact that require a trial on that claim. *Transportation Ins. Co., Inc. v. Hunzinger Constr. Co.*, 179 Wis. 2d 281, 290, 507 N.W.2d 136 (Ct. App. 1993). Here, Techworks bears that burden. Techworks must show that the non-compete agreement is reasonable. To survive summary judgment, Techworks has the burden to place facts in the record that demonstrate at least a material factual dispute on the issue of the need for and reasonableness of, the non-compete agreement. Because I conclude they have not done so with part of the non-compete agreement here, and because that part is indivisible from the whole, I would affirm the trial court and I dissent from the Majority opinion.

## II. Wille's non-compete provision.

¶ 35. As the Majority notes, there are basically two aspects to Wille's non-compete provision. The first restricts Wille for two years after terminating his employment from "any activity . . . that competes," anywhere, with any Techworks customer he serviced during the two years *before* he terminated his employment. The second restricts Wille for two years after terminating his employment, from "any activity . . . that competes" within

100 miles of Wauwatosa, with any Techworks customer who had been its customer within the two-year period *before* Wille terminated his employment, even though Wille never personally serviced that customer. Both of these two non-compete provisions are contained in the same paragraph of the agreement and both incorporate the definition of the "Restricted Customer." "Restricted Customer" means "a person or entity with whom Employer conducted its Business within two (2) years prior to the termination of Employee's employment with Employer."

## III. Techworks has not met its burden at summary judgment.

¶ 36. At summary judgment it is Techworks's burden to show that there are facts in the record that support its burden of proving that the non-compete is reasonable and necessary to its business. *See id.* at 290; *NBZ*, 185 Wis. 2d at 840. Techworks has not provided anything in the record here that suggests any reason or necessity for the specific two-year "Restricted Customer" look-back as to customers that ceased doing business with Techworks during the two years prior to the employee's departure.

¶ 37. And although it is true that the reviewing court examines the parties' submissions in a light most favorable to the party against whom summary judgment is sought, *Johnson v. Rogers Mem'l Hosp., Inc.*, 2005 WI 114, ¶ 30, 283 Wis. 2d 384, 700 N.W.2d 27, Techworks has not presented any factual submissions at all on the precise issue of the necessity for the two-year, look-back restriction on "any activity" with "Restricted Customers" who have already left Techworks.

¶ 38. There may be legitimate reasons for the above restriction, but Techworks has not presented any here. Techworks has simply argued, in a very generic fashion, that it has valid business concerns about former employees raiding its customer base. More than that is required. That argument only addresses part of the "Restricted Customer" provision, namely the part that prohibits the ex-employee from soliciting *current* customers of Techworks. I agree with the Majority that Techworks has met its burden on the part of the non-compete that restricts a former employee from trying to solicit *current* customers of the company, whether they are customers the employee serviced or not. But it has not offered any facts in support of the part that restricts the former employee from "any activity" . . . that competes with Techworks with a customer who left Techworks as long as two years before the employee did. To survive a summary judgment motion, Techworks must present facts demonstrating the need for this part of the non-compete restriction.

## IV. The two-year, look-back on former customers' part of the "Restricted Customer" provisions is unreasonable.

¶ 39. On the state of this record, I conclude that the non-compete is unreasonable with regard to restricting an employee who leaves from conducting "any activity" in competition with the company with customers who left the company up to two years before the employee did. Restricting an employee who leaves the company from working with a customer who left the company as long as two years previously is not reason-

able. This is especially true when the restriction is so broad as to encompass "any activity . . . that competes."[1]

¶ 40. The illogic of the two-year, look-back restriction is demonstrated by the fact that in this case it operates to restrict Wille from contacting customers of Techworks who had left Techworks *on their own* nine months before Wille left Techworks. Three customers, Hatch, Horner and Grumman Buttkas, left in May or June 2006. Another customer, Medical Eye, signed papers to replace Techworks in October 2006. Wille did not leave Techworks until late February 2007. The record shows that Medical Eye, in an affidavit in the record, averred that their decision to leave had nothing to do with Wille. A two-year restriction on "any activity" that competes with the company, with a customer who left the company of their own accord is unreasonable. Because the "Restricted Customer" provision here contains that restriction, it is not reasonable.

¶ 41. The look-back restriction on former customers was held invalid in *Equity Enterprises, Inc. v. Milosch*, 2001 WI App 186, 247 Wis. 2d 172, 633 N.W.2d 662 because it was unreasonable. *Id.*, ¶ 11. The Majority opinion here distinguishes *Equity Enterprises* on the grounds that under the facts of that case the look-back

---

[1] Recently, in *Star Direct*, the supreme court held that an employer does "have an interest in prohibiting the solicitation of its recent past customers." *See id.*, 767 N.W.2d 898, ¶ 38. But the court explicitly limited its holding to the facts of that case, stating that it "render[s] no opinion as to how much time must pass between a customer placing an order and a route salesperson's termination before the employer no longer has a legitimate protectable interest in that customer . . . . [but that] under the facts of this case . . . the interim of one year is not too long." *Id.*, ¶ 41. For that reason, I conclude *Star Direct* is consistent with the dissent.

went too far back. The look-back language in *Equity Enterprises* restricted the employee's contact with past customers of the company (who the employee had serviced), going all the way back to when the employee started with the company. *Id.*, ¶¶ 2, 15 n.4. In that case, the employee started work there in 1982, so the noncompete provision restricted his contact with customers back to 1982. *Id.* But the holding in *Equity Enterprises* does not limit its applicability to a magic number of years. It is the totality of the circumstances that must be evaluated, and more to the point here, the employer has the burden of demonstrating the necessity for a certain length of time, which Techworks has failed to do in this case.

¶ 42. In *Equity Enterprises* the court found the former customer look-back provision unreasonable even though the non-compete provisions there were even less onerous than Techworks's. In *Equity Enterprises* the type of activity was more particularly described as, "do business," or "entice employee," as opposed to the overbroad description, "any activity" in Techworks's noncompete agreement. Also, in *Equity Enterprises* the restriction applied only to those customers the employee had serviced, as opposed to Techworks's restriction that applies to any customers of the business, whether or not the employee had serviced them. *See id.*, ¶ 15. And despite these less broad, more favorable terms, the court in *Equity Enterprises*, still found the former customer restriction invalid. *See id.*, ¶ 28.

## V. The unreasonable portion of the non-compete provision is indivisible.

¶ 43. Where an unreasonable provision of a noncompete agreement is indivisible from the whole, then

the whole agreement is invalid. *Streiff v. American Family Mut. Ins. Co.*, 118 Wis. 2d 602, 613, 348 N.W.2d 505 (1984). Here the "Restricted Customer" provision is indivisible from the entire non-compete section. The "Restricted Customer" definition is contained within the "competition," Section 1c. of the agreement. The "Restricted Customer" definition applies both to the two-year, look-back provision in that section as well as the two-year post-termination provision. If you were to excise the "Restricted Customer" section or the "any activity" language, it would render the other part of the non-compete provision (the two-year post-termination part) meaningless. They are intertwined. Accordingly, the entire non-compete Section 1c. is invalid.[2]

¶ 44. For all of the foregoing reasons, I dissent and would affirm the decision of the trial court and grant summary judgment to Wille, Red Anvil and Dolan.

■■■■■■■■

[2] Although the Wisconsin Supreme Court in *Star Direct* overturned *Brass*, 242 Wis. 2d 733, ¶ 11, it upheld and clarified *Streiff*, 118 Wis. 2d 602. *See Star Direct*, 767 N.W.2d 898, ¶¶ 65–78. In that regard, *Star Direct* is consistent with the dissent.