**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**December 13, 2023**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP408**

STATE OF WISCONSIN

Cir. Ct. No. 2020CV1392

IN COURT OF APPEALS
DISTRICT II

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,

PLAINTIFF-APPELLANT,

V.

CURRENT ELECTRIC COMPANY AND UNITED FIRE & CASUALTY COMPANY,

DEFENDANTS,

SUNVEST SOLAR, INC.,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Racine County: JON E. FREDRICKSON, Judge. *Reversed and cause remanded for further proceedings.*

Before Gundrum, P.J., Neubauer and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. In 2017, the roof of a building caught fire underneath a solar-panel array for which Sunvest Solar, Inc. was the general contractor during installation. American Family Mutual Insurance Company filed a strict products liability claim against Sunvest, alleging both a design defect and a failure to warn. That claim was dismissed by the circuit court on summary judgment based on the court's conclusion that the opinions of American Family's electrical engineer were insufficient to create a triable issue on certain elements of the cause of action.

¶2 On appeal, American Family argues its expert's opinions were sufficient to establish that the risk of rodent damage to the solar-panel array was foreseeable and rendered the array unreasonably dangerous. Moreover, American Family argues the expert's report establishes that there were reasonable alternative designs that would have rendered the array reasonably safe. We agree. We also agree with American Family's argument that no further expert opinion testimony was necessary to establish a duty to warn. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶3 In 2011, Our Savior Lutheran Church installed a roof-mounted solar-panel system on its building. Sunvest was the general contractor for the project and purchased the solar panels from a distributor. Current Electric Company performed the installation. The building was subsequently sold to Circa on 7th LLC.

¶4 On November 28, 2017, a fire originated near the roof's peak under a solar panel. American Family, Circa on 7th's insurer, alleged that the fire was caused by rodent damage to the system's wiring, which removed the insulation and left bare wire exposed. This, in turn, caused electrical "arcing" that started the fire.

¶5 American Family paid to remediate the damage. It then commenced this action, advancing as relevant here a strict products liability claim against Sunvest. American Family's claim included both design defect and failure-to-warn components. As to the former, American Family alleged the system's design failed to include any guarding around the panel perimeters to prevent rodent access, and there was no metal conduit to protect the wiring from rodent damage. As to the latter, American Family claimed that the system failed to instruct the installer to guard the wiring against rodent damage and failed to warn the customer of the risk of fire created by rodent damage. According to American Family, such an instruction or warning would have reduced or eliminated the foreseeable risk of fire posed by the system.

¶6 American Family retained electrical engineer Robert Neary as an expert to testify as to his opinions about the cause of the fire. Neary was tasked with determining whether the risk of rodent damage should have been known during the panel design and installation phases. He was also asked to opine as to whether, if that risk was known, the installation contractor should have used an alternative design or method that could have ameliorated that risk.

¶7 As relevant here, Neary reached two conclusions. First, he opined that "[r]odent damage to internal and exterior wiring has been a well-known problem in the electrical industry for decades, well before the design and

installation of the subject solar array." Second, he concluded that "[m]odifications to the design or materials used were available to prevent the rodent damage to the subject solar array wiring from causing a fire." As set forth in more detail below, Neary's report contained his analysis that led him to those two conclusions, and he noted the availability of two conductor products that would have prevented rodent damage to the solar array wiring.

¶8 Sunvest sought the dismissal of the strict products liability claim on summary judgment. The motion argued that Neary's expert opinions were too general. Specifically, Sunvest argued that Neary failed to opine that this particular solar array was at risk of rodent damage. Sunvest further argued that Neary's opinion about alternative design or materials was inadequate because he "does not offer the opinion that the designer or contractor should have used something else or that the system was unreasonably dangerous."

¶9 The circuit court granted Sunvest's summary judgment motion. The court reasoned that the strict products liability statute, WIS. STAT. § 895.047 (2021-22),[1] "requires [that] the defective condition be a cause [of] plaintiff's damages. The plaintiff does not have the correct experts to proceed under the design defect or a failure to warn claim against either [the panel manufacturer] or Sunvest." American Family now appeals Sunvest's dismissal.

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

**DISCUSSION**

¶10    We review a grant of summary judgment de novo. *Estate of Paswaters v. American Fam. Mut. Ins. Co.*, 2004 WI App 233, ¶13, 277 Wis. 2d 549, 692 N.W.2d 299. Summary judgment is appropriate when the moving party is entitled to judgment as a matter of law and no genuine issue of material fact exists. WIS. STAT. § 802.08(2). At the summary judgment stage, all facts and reasonable inferences from those facts are viewed in the light most favorable to the nonmoving party. *Bohm v. Leiber*, 2020 WI App 52, ¶8, 393 Wis. 2d 757, 948 N.W.2d 370.

¶11    American Family's complaint advanced a single strict products liability claim against Sunvest, but it had two components. The first component was a claim for a defective design, which requires proof that "the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the manufacturer and the omission of the alternative design render[ed] the product not reasonably safe." WIS. STAT. § 895.047(1)(a).

¶12    The second claim was for failure to include adequate instructions or warnings with the product. A product is defective under that theory "only if the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the manufacturer and the omission of the instructions or warnings renders the product not reasonably safe." *Id.*

¶13    In addition to these matters, by statute the strict products liability claimant must show by a preponderance of the evidence four things: that the defective condition rendered the product unreasonably dangerous to persons or

property; that the defective condition existed at the time the product left the control of the manufacturer; that the product reached the end user or consumer without substantial changes from the condition in which it was sold; and that the defective condition was a cause of the claimant's damages. WIS. STAT. § 895.047(1)(b)-(e).[2]

¶14 WISCONSIN STAT. § 895.047 was enacted in 2011, and the parties quarrel about whether foreseeability of harm is an element of a strict products liability claim.[3] The dispute surrounding foreseeability of harm is academic in this case: even if American Family must prove foreseeability, Neary's expert report was sufficient to create a triable issue of fact on that point.

¶15 Though Neary's report did not use the word "foreseeable," many of his opinions quite obviously went to that criterion. Neary stated that rodent damage to electrical wiring of all sizes was a known problem for decades in the electrical industry prior to the design and installation of the solar-panel array here. He further wrote that rodents such as squirrels and mice have constantly growing

---

[2] The parties' briefs contain no argument concerning the fact that Sunvest was the general contractor for the solar-panel array's installation and was not the manufacturer. Similarly, there is no argument concerning the allegedly defective condition of the panel array at time of manufacture nor argument about whether the panels were in the same condition upon receipt. We do not address these matters. *See Techworks, LLC v. Wille*, 2009 WI App 101, ¶27, 318 Wis. 2d 488, 770 N.W.2d 727.

[3] It seems clear that at common law, foreseeability of harm was not required. *See Green v. Smith & Nephew AHP, Inc.*, 2001 WI 109, ¶56, 245 Wis. 2d 772, 629 N.W.2d 727 ("Thus, regardless of whether a manufacturer could foresee potential risks of harm inherent in its defective and unreasonably dangerous product, strict products liability holds that manufacturer responsible for injuries caused by that product."). The current statutory language appears to abrogate this rule, although we need not definitively resolve that issue given the existing state of the record. *See Patrick Fur Farm, Inc. v. United Vaccines, Inc.*, 2005 WI App 190, ¶8 n.1, 286 Wis. 2d 774, 703 N.W.2d 707 (observing that the court of appeals decides cases on the narrowest grounds).

teeth and are attracted to soft metals like copper and aluminum for sharpening. Finally, he addressed solar installations specifically:

> Solar panel arrays are prime targets for rodent damage. Rodents look for protection from the elements especially in the winter. A rooftop solar array in the wintertime can provide shelter and warmth. Solar panel[s] are normally located on the roof with the most southern exposure, which is exposed to the most sunlight. Sunlight hitting the solar panels during the day, even in the wintertime, will create a warm shelter under the panel.

An article included with Neary's report referred to rodents chewing wires as a "common problem in the [photovoltaic] industry."

¶16    We do not require that experts utter magic words when offering their opinions. *See **Drexler v. All Am. Life & Cas. Co.**￼*, 72 Wis. 2d 420, 432, 241 N.W.2d 401 (1976). A clear inference from Neary's opinions was that the risk of rodent damage to solar installations should have been known during the design and installation phases of this particular solar array.[4]  Neary's opinion was sufficient to allow a reasonable factfinder to conclude that there was a foreseeable risk of harm due to rodent damage.

¶17    Sunvest also argues that Neary's report was inadequate to create a triable issue of fact regarding whether the solar-panel array was unreasonably dangerous to persons or property. Again, we disagree. Beyond the fact that a fire actually occurred in this case, Neary included in his report a January 2007 article discussing the risk of solar-panel fires and advising home inspectors to "[c]heck for damage from rodents and other pests, which could compromise wiring or

---

[4] We are unpersuaded that Neary's opinion was deficient because it failed to state that this particular solar power array was at risk of rodent damage. Neary's report discusses why all solar arrays are at risk—a category that includes the specific array at issue here.

insulation." Again, a reasonable factfinder could infer from Neary's analysis that the solar-panel installation was unreasonably dangerous.

¶18 Finally, Neary's report was sufficient to create a triable issue regarding the availability of a reasonable alternative design. Neary specifically opined that there were two types of rodent-resistant cable wraps, either of which "would have prevented the rodent damage to the solar array wiring." This opinion is, like any of Neary's opinions, subject to adversarial testing, but a reasonable factfinder could rely upon it to find that there was a reasonable alternative design that would have rendered the solar array safe.

¶19 One of American Family's arguments pertains specifically to its failure-to-warn claim, which Neary's report did not address. Instead, American Family argues that no expert testimony was required to establish that the risk of rodent damage to the solar-panel wiring could have been reduced or avoided by the provision of reasonable instructions or warnings. Sunvest counters that without expert testimony, American Family cannot meet its obligation to show that "the defendant had a duty to warn and [that] the danger was reasonably foreseeable." *Tanner v. Shoupe*, 228 Wis. 2d 357, 365 n.3, 596 N.W.2d 805 (Ct. App. 1999).

¶20 We disagree with Sunvest. As set forth above, a factfinder could reasonably conclude that the risk of rodent damage to the solar-panel wiring was both foreseeable and rendered the installation unreasonably dangerous. From this, the factfinder could reasonably infer that Sunvest had a duty to warn about the dangers of rodent damage such that the installer or consumer could take efforts to mitigate those risks. As American Family points out, the adequacy of a warning is typically a matter for the jury to decide, *Schuh v. Fox River Tractor Co.*, 63

Wis. 2d 728, 739, 218 N.W.2d 279 (1974), and in certain cases, it may be necessary to introduce expert testimony to establish a warning's inadequacy. But here—where it is undisputed that Sunvest provided no warning—the matter of whether a warning should have been given is not so unusually complex or esoteric as to require expert testimony. *See **Racine Cnty. v. Oracular Milwaukee, Inc.**,* 2010 WI 25, ¶28, 323 Wis. 2d 682, 781 N.W.2d 88 ("[I]f the court or jury is able to draw its own conclusions without the aid of expert testimony, 'the admission of such testimony is not only unnecessary but improper.'" (citation omitted)).

¶21 Based upon the foregoing, we reverse the grant of summary judgment in favor of Sunvest and remand for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.