**2022 WI App 47**

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 2021AP1079

Complete Title of Case:

**DIAMOND ASSETS LLC,**

**PLAINTIFF-APPELLANT,**

**V.**

**CARLOS GODINA,**

**DEFENDANT-RESPONDENT.**

| | |
|---|---|
| Opinion Filed: | July 14, 2022 |
| Submitted on Briefs: | December 16, 2021 |

| | |
|---|---|
| JUDGES: | Blanchard, P.J., Kloppenburg, and Graham, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Bryan C. Whitehead* and *Michael D. Hahn* of *Nowlan Law LLP*, Janesville. |
| Respondent ATTORNEYS: | On behalf of the defendant-respondent, the cause was submitted on the brief of *Michael D. Huitink*, *Willem J. Noorlander*, and *Stephanie Hanold Anacker* of *SBR Law Group LLC*, Brookfield. |

# COURT OF APPEALS
# DECISION
# DATED AND FILED

## July 14, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1079**

STATE OF WISCONSIN

Cir. Ct. No. **2020CV414**

IN COURT OF APPEALS

---

DIAMOND ASSETS LLC,

PLAINTIFF-APPELLANT,

V.

CARLOS GODINA,

DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Rock County: DERRICK A. GRUBB, Judge. *Affirmed in part; reversed in part and cause remanded*.

Before Blanchard, P.J., Kloppenburg, and Graham, JJ.

¶1 BLANCHARD, P.J. Diamond Assets LLC ("Diamond") and Carlos Godina, a former Diamond employee, dispute whether Diamond can enforce either or both of two restrictive covenants against Godina without

violating WIS. STAT. § 103.465 (2019-20).[1]  One restrictive covenant limits Godina's ability to compete with Diamond in various ways as defined in a noncompete covenant and the other limits his ability to use "Confidential Information" as defined in a confidentiality covenant.  The circuit court granted Godina's motion to dismiss Diamond's operative complaint, which alleges that Godina violated both the noncompete covenant and the confidentiality covenant, on the ground that each violates § 103.465 as an unreasonable restraint.  Diamond contends that it should be allowed to proceed beyond the motion to dismiss stage so that it can present evidence on summary judgment or at trial regarding its business and Godina's employment that will justify both covenants based on the totality of the relevant circumstances.

¶2     We agree with Diamond that the noncompete covenant is not properly subject to a motion to dismiss as unenforceable under WIS. STAT. § 103.465 because Diamond might be able to meet its burden to present evidence showing that the covenant is "reasonably necessary for the protection of" its business.

¶3     As to the confidentiality covenant, we agree with Godina that it is properly subject to a motion to dismiss as unenforceable, regardless of the evidence Diamond might be able to submit.  Diamond fails to identify any allegation of fact or reasonable inference arising from its complaint under which the covenant restricts use or sharing of information in a manner that could be reasonably necessary for Diamond's protection.

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶4　Separately, we address and reject an alternative argument that Godina makes involving a modification provision in the contract.

¶5　Accordingly, we reverse dismissal of Diamond's claim based on the noncompete covenant and affirm dismissal of its claim based on the confidentiality covenant.

## BACKGROUND

¶6　Because we review a grant of a motion to dismiss, we accept as true factual allegations in Diamond's operative complaint for purposes of review. *See Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶18, 356 Wis. 2d 665, 849 N.W.2d 693.　The complaint incorporates the two covenants at issue here, but otherwise the allegations in the complaint are sparse.　We now summarize pertinent allegations.

¶7　Diamond is an "asset management organization" that runs "buy-back programs for … information technology devices."　The parties agreed in 2016 that Godina would work in sales for Diamond.　Several months into his employment, Godina signed a contract that contains the two covenants at issue in this appeal:　a "Non-Competition" covenant and a "Confidentiality Agreement."　The contract also contains a provision labeled "Severability" that purports to require the modification of other provisions in the contract under certain circumstances.　This modification provision states in pertinent part that, if any provision of the contract is ruled unenforceable by "a court of competent jurisdiction," the unenforceable provision shall "be changed in scope by the court only to the extent deemed necessary by that court to render the provision reasonable and enforceable."

¶8      Godina informed Diamond that he was terminating his employment on or about June 17, 2020.  Diamond responded by asking Godina to reconsider. Godina did not report for work on June 18, and on that day he emailed "Confidential Information" (as defined in the confidentiality covenant) to a third party.  Diamond terminated Godina based on his emailed disclosure of confidential information.  Godina continues to possess information "belonging" to Diamond and he "has contacted a current customer of Diamond looking for employment," in violation of the noncompete covenant.

¶9      Turning to the procedural history, Diamond brought this action against Godina, eventually claiming breach of contract and anticipatory breach of contract based on both the noncompete and confidentiality covenants.  Diamond sought damages for alleged breaches of the covenants and permanent injunctions to prevent further breaches.

¶10     Godina brought a motion to dismiss the operative complaint on the ground that the noncompete and confidentiality covenants are both unenforceable "as a matter of law" under WIS. STAT. § 103.465.

¶11     In opposing the motion to dismiss, Diamond argued in part that under "controlling precedent," the circuit court "cannot determine whether [the covenants are] enforceable as a matter of law at this stage in litigation."  Instead, Diamond argued, the court must deny the motion so that "the facts and circumstances of the case [may] be developed."  In support, Diamond submitted an affidavit from its chief financial officer, addressing Godina's work for

Diamond and purporting to describe some details regarding Diamond's customer base.[2]

¶12 The circuit court ruled that both covenants impose unreasonable restraints on Godina and are unenforceable under WIS. STAT. § 103.465. In the alternative, the court concluded, the covenants are unenforceable based on the additional ground that the modification provision is invalid. Accordingly, the court granted Godina's motion to dismiss. Diamond appeals.

## DISCUSSION

¶13 We begin by addressing the parties' arguments regarding the pertinent legal standards here, and then summarize how we apply WIS. STAT. § 103.465 and related case law to restrictive covenants in the specific context of a motion to dismiss. We apply the legal standards first to the noncompete covenant and then to the confidentiality covenant. In the final section we address Godina's argument regarding the modification provision.

¶14 In addressing each issue, we use a de novo standard of review in interpreting and applying WIS. STAT. § 103.465, along with related case law, to the facts alleged in Diamond's operative complaint. *See Meyers v. Bayer AG*, 2007 WI 99, ¶22, 303 Wis. 2d 295, 735 N.W.2d 448; *Star Direct, Inc. v. Dal Pra*, 2009 WI 76, ¶18, 319 Wis. 2d 274, 767 N.W.2d 898. Specifically, we review de novo "whether a complaint states a claim upon which relief can be granted." *Meyers*,

---

[2] Neither party contends that Godina's motion to dismiss was or should have been treated by the parties or the circuit court as a motion for summary judgment due to the submission of evidence outside the pleadings. *See* WIS. STAT. § 802.06(2)(b). Our review is solely of the circuit court's decision to grant Godina's motion to dismiss Diamond's complaint.

303 Wis. 2d 295, ¶21. Restrictive covenants are contracts, "the interpretation of which is a matter of law also reviewed de novo." *Star Direct*, 319 Wis. 2d 217, ¶18.

## I. Legal Standards

¶15 WISCONSIN STAT. § 103.465 provides in full:

> **Restrictive covenants in employment contracts.**
> A covenant by an assistant, servant or agent not to compete with his or her employer or principal during the term of the employment or agency, or after the termination of that employment or agency, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any covenant, described in this section, imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint.

The employer seeking to enforce a restrictive covenant has the burden to show that it is reasonable in all respects. *See Star Direct*, 319 Wis. 2d 274, ¶¶19-21 ("Restrictive covenants in Wisconsin are prima facie suspect as restraints of trade that are disfavored at law, and must withstand close scrutiny as to their reasonableness."). If the employer does not meet that burden, the covenant is struck in its entirety. *Id.*, ¶21.

¶16 To be enforceable, "the restraint must":

(1) be necessary for the protection of the employer, that is, the employer must have a protectable interest justifying the restriction imposed on the activity of the employee;

(2) provide a reasonable time limit;

(3) provide a reasonable territorial limit;

(4) not be harsh or oppressive as to the employee; and

(5) not be contrary to public policy.

*Id.*, ¶20 (citing *Lakeside Oil v. Slutsky*, 8 Wis. 2d 157, 162-67, 98 N.W.2d 415 (1959)).

¶17    With these points of law as background, the parties disagree about how courts are to analyze a motion to dismiss (as opposed to a motion for summary judgment) that asserts that a restrictive covenant is unenforceable under WIS. STAT. § 103.465.   In its opening appellate brief, Diamond contends that evidence that is extrinsic to a contract containing a restrictive covenant and that relates to "the totality of the circumstances" is always relevant to assessment of the covenant's enforceability, even when enforceability is raised in a motion to dismiss.   Pertinent here, the argument proceeds, this means that the circuit court had to take into account evidence regarding the totality of the circumstances. Diamond's position is that the limited allegations in the complaint and the terms of the covenants are not enough to capture the totality of the circumstances.

¶18    Godina apparently takes the position that Wisconsin case law has identified some circumstances in which a party challenging a restrictive covenant can establish that it is unenforceable based solely on its text, regardless of the evidence that might be presented on summary judgment or at trial.  For example, we understand Godina to argue that an employer could never, regardless of the totality of the circumstances, have a protectable interest justified by a restrictive covenant such as the noncompete covenant here, because it prevents a former employee from working with a potential customer whom the employer only *unsuccessfully* solicited.   Godina's position does not clearly address how courts

should, as a general matter, analyze allegations contained in the pleadings, beyond the text of a covenant itself that is incorporated into the pleadings.[3] He might intend to argue that such allegations could never be relevant and that the analysis must be entirely limited to the text of the covenant at issue.

¶19 In its reply brief, Diamond clarifies that it does not intend to argue that restrictive covenants are "exempt" from motions to dismiss. Rather, Diamond derives from case law in this context the following two-step test for motions to dismiss. The court should first interpret the covenant as a contract. Then, the court should determine whether there is a provable set of facts in which all of its restraints are reasonable, in which case the covenant is enforceable.

¶20 We agree with Diamond that this analysis is consistent with case law interpreting and applying WIS. STAT. § 103.465. However, we add that pertinent standards for motions to dismiss require that, during the second step of the analysis, the court should consider the allegations in the pleadings, to the extent that they might be relevant to the analysis. *See **Data Key***, 356 Wis. 2d 665, ¶¶19, 21 (in the review of a motion to dismiss, all "well-pleaded" facts alleged in the complaint "and the reasonable inferences therefrom" are accepted as true); ***Cattau v. National Ins. Servs. of Wis., Inc.***, 2019 WI 46, ¶6, 386 Wis. 2d 515, 926 N.W.2d 756 ("'The sufficiency of a complaint depends on substantive law that underlies the claim made because it is the substantive law that drives what facts

---

[3] Here and elsewhere, we refer to the contents of "the pleadings," by which we mean the documents on which courts rely in resolving motions to dismiss. *See* WIS. STAT. § 802.02(1) ("Contents of pleadings.").

must be pled.'" (quoted source and alteration omitted)).  We now further expand on the applicable legal standards for each step.

¶21    Restrictive covenants are contract terms.    Accordingly, "[t]he standard rules of contract interpretation apply," with "the primary goal" being to determine the parties' intent at the time the contract was made.  *See Farm Credit Servs. of N. Cent. Wis., ACA v. Wysocki*, 2001 WI 51, ¶12, 243 Wis. 2d 305, 627 N.W.2d 444.  We interpret covenants "reasonably so as to avoid absurd results, giving the words their plain meaning, reading as a whole, and giving effect where possible to every provision." *Star Direct*, 319 Wis. 2d 274, ¶62.  Thus, we will not "read a clause unreasonably in order to find the clause unreasonable and unenforceable against the employee." *Id.*  Subject to these rules of contract interpretation, we interpret restrictive covenants "in favor of the employee," with the result that we do not construe them "to extend beyond their proper import or farther than the contract language absolutely requires." *See id.*, ¶¶19, 62 ("It is only within [the] framework" of giving contractual language its plain meaning, reading the contract as a whole, while avoiding absurd results, "that we interpret restrictive covenants in favor of the employee").

¶22    Once the meaning of a covenant is established—for the moment setting aside the point that the pleadings, including the incorporated texts of the covenants at issue, are a source for our facts here—we assess the covenant's enforceability under WIS. STAT. § 103.465 based on "the totality of the circumstances," not limited to the text of the covenant. *See Rollins Burdick Hunter of Wis., Inc. v. Hamilton*, 101 Wis. 2d 460, 468-70, 304 N.W.2d 752 (1981); *Techworks, LLC v. Wille*, 2009 WI App 101, ¶4, 318 Wis. 2d 488, 770 N.W.2d 727.

¶23    ***Rollins*** contains a robust discussion of the pertinent analysis. In that case, an employer sought to enforce restrictive covenants that included a noncompete covenant. ***Rollins***, 101 Wis. 2d at 462-63. The noncompete covenant precluded a former employee from soliciting customers of the employer, including those with whom the former employee had no contact while working for the employer. ***Id.*** The circuit court granted the former employee's motion to dismiss the complaint. ***Id.*** at 462, 464. Our supreme court remanded the case to the circuit court to give the parties "a full opportunity to develop the necessary evidentiary record" to consider the reasonableness of restrictive covenants at issue. ***Id.*** at 471-72. The court identified as a relevant consideration the employer's concern over information regarding all of the employer's customers to which the former employee had access. ***Id.*** at 469-70. The court explained that

> the determination of whether a restraint of this type is reasonably necessary for the protection [of] an employer can[not] be intelligently made without a consideration of the nature and character of such information, including the extent to which it is vital to the employer's ability to conduct its business, the extent to which the employee actually had access to such information, and the extent to which such information could be obtained through other sources. As to whether the restraint is unreasonable to the employee, we do not see how such a determination could be made without considering additionally the extent to which the restraint on competition actually inhibits the employee's ability to pursue a livelihood in that enterprise, as well as the particular skills, abilities, and experience of the employee sought to be restrained. These, of course, are not exhaustive, since the very essence of what is reasonable involves the totality of the circumstances.

***Id.*** at 470.

¶24    Subsequent case law has reaffirmed this explanation in ***Rollins*** that the reasonableness of a restraint can depend on evidence that is extrinsic to the text of a covenant alone. *See **Wysocki***, 243 Wis. 2d 305, ¶¶3-4, 16, 22 (reviewing

grant of summary judgment in favor of former employee; remanding to circuit court "to develop the evidentiary record in order to determine whether the covenant is reasonable under [WIS. STAT.] § 103.465"); *Star Direct*, 319 Wis. 2d 274, ¶¶2, 12, 28-29 (reviewing partial grant of summary judgment to former employee; noting and analyzing facts in the summary judgment materials, including averments by officer of former employer regarding the nature of the business). Under this case law, the text of the covenant establishes the nature of the restraint based on familiar contract interpretation principles. But its reasonableness cannot necessarily be determined based solely on the text of the covenant, without reference to extrinsic evidence.

¶25 In sum, under *Rollins* and the unambiguous terms of WIS. STAT. § 103.465, reasonableness is assessed based on the totality of the circumstances, regardless of the stage of the proceedings. The statute turns on what is reasonably necessary to protect the employer, a factual matter that may or may not be addressed wholly or in part by the text of the covenant and therefore may require the assessment of allegations and reasonable inferences in the pleadings (at the motion to dismiss stage) or of the evidence submitted on summary judgment that is extrinsic to the contract. This is reflected in each of the *Lakeside Oil* requirements, which are themselves based on § 103.465. For example, whether a covenant is "harsh or oppressive as to the employee" ordinarily will depend on extrinsic evidence showing how the covenant does or does not reasonably restrain the former employee given the particular circumstances. *See Rollins*, 101 Wis. 2d at 470 ("whether the restraint is unreasonable as to the employee" depends on extrinsic evidence regarding employee's circumstances).

¶26 At the same time, as Diamond acknowledges, it is possible for a restrictive covenant to be so restrictive that it is per se invalid under WIS. STAT.

11

§ 103.465, regardless of the circumstances that are alleged or inferable from the pleadings at the motion to dismiss stage. *See Wysocki*, 243 Wis. 2d 305, ¶¶12-16 (beginning the analysis by discussing whether the covenant was "invalid per se," determining that it was not, and on that ground remanding for the development of an evidentiary record to use in assessing whether the covenant was reasonable under § 103.465); *Data Key*, 356 Wis. 2d 665, ¶¶19, 21 (the complaint must allege facts that, if true, entitle plaintiff to relief to withstand motion to dismiss). Thus, a former employer seeking to enforce a covenant could in some cases fail to state a claim on which relief could be granted because the covenant is per se invalid. This would be the case if the covenant contains an unjustifiable restraint that is evident from its text alone, even after taking into account inferences raised by the pleadings regarding the reasonableness of the restraint. *See* WIS. STAT. §§ 802.02(1)(a), 802.06(2)(a)-(b).

¶27 Case law provides a concrete example. A noncompete covenant that entirely lacks either a time limitation or a territorial limitation is not reasonable, regardless of the circumstances. *See Holsen v. Marshall & Ilsley Bank*, 52 Wis. 2d 281, 287, 190 N.W.2d 189 (1971) ("Both [limitations] are clearly required by the statute."). As our supreme court explained:

> The statutory reference to covenants … "within a specified territory and during a specified time" … does more than describe a category of covenants …. [The] entire absence of limitations as to time and place is fatal to a claim of being within the statutory sanction.

*Id.*; *but see Rollins*, 101 Wis. 2d at 466-67 (clarifying that *Holsen* does not mandate use of a geographic territory when a territorial limit is defined using "specific customers or activities").

¶28    The question then arises, could a party ever establish that a covenant imposes such an extreme limitation that it is a per se violation of *Lakeside Oil* requirements *other* than the complete absence of either a time or a territory limitation?  We conclude that the answer is yes.  The terms of WIS. STAT. § 103.465 and related case law provide us with no reason to think that, when the general standards for a motion to dismiss are applied in this context, movant-employees cannot ever establish that a covenant imposes restraints, other than the complete absence of either time or territory limitations, that are per se invalid. One example is demonstrated in our discussion of the confidentiality covenant below.  A former employee could show, based on the extreme reach or scope of the confidentiality covenant's text alone when construed in the context of all reasonable inference in the pleadings, that a restraint could not be shown under any set of facts to be necessary to shield a protectable interest of the employer.

¶29    With that background, we pause to make two clarifications regarding the positions of the parties here.  The first is that the parties do not meaningfully engage with the allegations in Diamond's operative complaint or the reasonable inferences that arise from those allegations.  Godina does not argue that the allegations in Diamond's complaint, if true, fail to give rise to at least some reasonable inferences regarding the specific circumstances that Diamond argues support its position that its covenants are enforceable.  Rather, his position is apparently that the covenants could not be enforceable even if those allegations are true—indeed, even if any additional circumstances casting the covenants in a positive light could be proven.  On the other hand, Diamond fails to tie its arguments about the potential proof regarding the totality of the circumstances back to any allegation or combination of allegations in its complaint, other than the terms of covenants incorporated into the complaint.  The operative complaint

contains few allegations relating to the business and employment circumstances surrounding the covenants here. Still, it contains a few allegations that could support potential concerns regarding Godina's access to information that would allow him to compete unfairly with Diamond. In addition to the allegation noted above regarding the type of business Diamond engages in and Godina's former role as a salesman, the complaint alleges the following: "Godina's knowledge of Diamond's confidential information, including its product procurement and pricing strategies, will substantially advantage Godina's potential future employer and harm Diamond."

¶30 Our second clarification is that at least some of Diamond's arguments miss the mark by suggesting that our analysis should ignore hypothetical applications of the covenant. To the contrary, applying WIS. STAT. § 103.465 necessarily involves consideration of facts and circumstances relevant to testing each restraint imposed by a covenant, beyond the factual circumstances of a specifically alleged breach, before it can be determined whether the alleged breach involves an unenforceable covenant. *See Manitowoc Co. v. Lanning*, 2016 WI App 72, ¶23, 371 Wis. 2d 696, 885 N.W.2d 798 (In determining whether a restrictive covenant is per se invalid, "our cases demonstrate that we look not at the particular facts or circumstances of a case, but to the plain language of the agreement itself."), *aff'd*, 2018 WI 6, ¶41, 379 Wis. 2d 189, 906 N.W.2d 130. That is, we look to the "evident" and "plain" applications of the text of a covenant to determine whether it imposes even one unreasonable restraint, while recognizing that we must take into account all relevant circumstances that Diamond might be able to prove based on what is reasonably inferable from the allegations in the pleadings. *See id.*, ¶23; § 103.465 ("Any covenant … imposing *an* unreasonable restraint is … unenforceable even as to any part of the covenant

… that would be a reasonable restraint." (emphasis added)). In the posture of this case, then, the issue presented is whether there is at least one evident or hypothetical application of the covenant's plain text that is unreasonable because no facts could be proven that would render the protection created by the restraint reasonably necessary to Diamond.

## II. Noncompete Covenant

¶31 Applying these standards to the noncompete covenant here, we conclude that the circuit court did not have a proper basis to grant Godina's motion to dismiss. This is because Diamond identifies factual circumstances that, if proven, could show that each of the covenant's restraints is reasonable and these circumstances appear to have some inferable basis in one allegation of the complaint.

¶32 The noncompete covenant provides in full:

> While Employee is employed by Diamond Assets and for a period of two (2) years following the termination of employment with Diamond Assets, for whatever reason, Employee agrees that Employee shall not engage in activities substantially similar to those Employee performed on behalf of Diamond Assets on a regular basis during the twelve (12) months preceding the end of Employee's employment (or for the length of Employee's employment, whatever is shorter), and which are competitive with the then activities of Diamond Assets. This provision is agreed to extend only to the performance of such activities on behalf of clients or customers of Diamond Assets. For purposes of this provision "clients or customers" shall mean individuals or entities for whom Diamond Assets performed services within the twenty-four (24) months preceding Employee's termination, or to whom Diamond Assets had presented written proposals to provide services within the twelve (12) months preceding Employee's termination and with regard to whom Employee had been introduced as possibly performing services for that client or customer."

15

To summarize, as pertinent here, the covenant is limited to two years following termination of employment, with a "territory" that is based not on the drawing of lines on a map, but instead based on "activities" and "customers" as defined in the covenant. As discussed in *Rollins*, "territorial limits" as referenced in the *Lakeside Oil* test, are not limited to the "territory" defined by geography, but can also mean the "territory" defined solely by reference to specified "activities" or "customer lists." *See Rollins*, 101 Wis. 2d at 463-68 (concluding that "territorial limit" defined by specified activities or customers is not per se unreasonable even if it lacks a geographic component).

¶33 Customers to whom Godina cannot provide pertinent services during the two-year covenant period fall into two groups: (1) *actually served customers*, defined as those to whom the Diamond business as a whole actually provided services in the final two years of Godina's employment, regardless of whether Godina was personally involved; or (2) *potential customers*, defined as those to whom Diamond presented a written proposal within the last year of Godina's employment, but only when Godina was introduced as possibly providing services as a Diamond employee.

¶34 The parties dispute whether there are provable allegations of circumstances under which each of these two categories of customer restraints is reasonable under WIS. STAT. § 103.465.[4] As discussed above, under § 103.465,

---

[4] We do not understand Godina to argue that, in itself, the two-year time limitation of the noncompete covenant renders it unenforceable, regardless of the evidence that might be adduced when the noncompete covenant is tested after the motion to dismiss stage. *See Fields Found., Ltd. v. Christensen*, 103 Wis. 2d 465, 479, 309 N.W.2d 125 (Ct. App. 1981) ("two-year limitations have previously been upheld and are therefore not unreasonable per se"). Similarly, Godina does not appear to take issue with how the noncompete covenant defines the activities covered. *See Rollins Burdick Hunter of Wis., Inc. v. Hamilton*, 101 Wis. 2d 460, 465, 304

(continued)

16

Diamond bears the burden to justify the full scope of the restraints imposed by each restraint category. As we now explain, neither restraint is necessarily unenforceable depending on the development of the facts that could be averred on summary judgment or proven at trial.

### A. Actually Served Customers Restraint

¶35 We conclude that the actually served customers restraint is analogous to the territorial limit at issue in *Rollins*, consistent with reasoning in *Star Direct*. We now explain further.

¶36 As noted, this part of the noncompete restricts Godina's activities no matter how little personal contact with, or work for, customers Godina had. In themselves, these factors weigh against reasonableness. *See Rollins*, 101 Wis. 2d at 469 ("the scope of actual customer contact may serve as a guide to what scope of restriction is reasonable"); *Techworks*, 318 Wis. 2d 488, ¶12 (noting that a covenant with no geographic limitation is substantially narrowed and rendered reasonable by requirement that employee actually served customers).

¶37 However, under the reasoning of the court in *Rollins*, the lack of personal contact between the restricted employee and customers that is placed out of bounds by a covenant does not necessarily invalidate it, depending on the circumstances. *Rollins*, 101 Wis. 2d at 468-69. The court explained that, even

N.W.2d 752 (1981) (in more "'modern cases'" "'division of labor and specialization now make it of the utmost importance that a restraint define carefully the activities in which the employee is not to engage'" (quoted source omitted)); *Star Direct, Inc. v. Dal Pra*, 2009 WI 76, ¶56, 319 Wis. 2d 274, 767 N.W.2d 898 ("A former employee engaged in a similar but non-competitive enterprise poses little if any additional danger to his former employer's business interests than any other member of the public engaged in substantially similar but non-competitive activities.").

when there is a lack of proof that there was contact between the employee and a customer, the employee may have had access to information about the customer that creates a reasonable need for an employer to protect itself from the employee leaving the business and taking unfair advantage of the information in the course of then working with that customer. *See id.*; *see also Star Direct*, 319 Wis. 2d 274, ¶42 & n.8 (upholding noncompete clause that placed out of bounds customers with whom former employee had not been in contact for years, or at all, if employee had "special knowledge" concerning those customers). Given this potential risk, the *Rollins* court explained that

> [a] flat rule invalidating all restrictive covenants whose scope exceeded a former employee's actual customer contact would amount to a declaration that it is never reasonably necessary to protect an employer against the improper use of information about customers with whom the employee did not have actual contact. But as we have indicated, what is reasonable varies from case to case, and what may be unreasonable in one instance may be very reasonable in another.

*See Rollins*, 101 Wis. 2d at 468. On this basis, the court rejected the former employee's argument that the noncompete covenant was unreasonable because it applied to "any" customer of the former employer for up to two years prior to the employee's termination. *See id.* at 462-63, 470-72.

¶38     Further, more recently our supreme court has shown that a customer-based territory in a noncompete covenant, like the one at issue here and in *Rollins*, is not necessarily unenforceable as to "recent past" customers of the employer who decided to stop doing business with the former employer. *See Star Direct*, 319 Wis. 2d 274, ¶¶32-41. With the benefit of undisputed facts created by a summary judgment record, the court in *Star Direct* concluded that the employer could enforce a noncompete covenant that applied to customers to whom the employer

as a whole had provided services during the last year of its former employee's tenure. *Id.*, ¶¶38-41. This was based on several protectable interests that the employer had in restricting the solicitation of its recent past customers, such as preventing the former employee from using the employer's own pricing information and pricing strategies against the employer. *Id.*, ¶¶38-40.[5] Here, Godina fails to show that the record could not be developed to show that Diamond has protectable interests of this kind. As noted above, Diamond's operative complaint contains one allegation, which Godina does not address, that asserts concern over Godina's access to, among other things, "pricing strategies" and his ability to use that information to gain a competitive advantage over Diamond in dealing with its current or former customers.

¶39 Moreover, the noncompete covenant here limits the scope of the actually served customer restraint, including "recent past" customers, to those who were served within the last year of Godina's employment. *See id.*, ¶44 (distinguishing *Equity Enters., Inc. v. Milosch*, 2001 WI App 186, 247 Wis. 2d 172, 633 N.W.2d 662, in which the court deemed a restraint unreasonable because it barred the former employee from doing business even with customers who were

---

[5] It does not alter our analysis that, unlike the noncompete covenant here, the pertinent restraint in *Star Direct* applied only to those customers with whom the former employee had no contact during the employment, so long as the former employee gained "special knowledge" of the customer through his work for the employer. *See Star Direct* 319 Wis. 2d 274, ¶¶9, 39. To be clear, here Diamond bears the burden following remand to show that, to the extent the noncompete covenant can apply to customers with whom Godina had little or no contact, such a restraint meets the requirements of *Lakeside Oil v. Slutsky*, 8 Wis. 2d 157, 98 N.W.2d 415 (1959). Following the logic of *Rollins* and *Star Direct*, one way in which Diamond could potentially do so would be to rely on evidence that Godina's position gave him access to information about all of Diamond's actually served customers, even those with whom he had no personal contact or for whom he did no work, which depending on the circumstances could give him an unfair competitive advantage.

not recent or current customers; some of employee's customer contact was as remote as 15 years earlier).

### B. Potential Customers Restraint

¶40    The potential customer restraint on contact with customers who may not have done business with Diamond is certainly broad.  This weighs against reasonableness in several respects.  In theory, such a customer territory could restrict Godina from soliciting customers who, after considering Diamond's proposal, declined doing business with Diamond and have presumably kept an eye out for other opportunities.  To that extent, such a customer-based territory could restrict the kind of "legitimate and ordinary competition of the type that a stranger could give," which is not entitled to employer protection.  *See Lakeside Oil Co.*, 8 Wis. 2d at 163.  Further, as explained above, Diamond bears the burden to establish the reasonableness of each kind of restraint, to its full extent, imposed by its covenants.  However, for several reasons, we cannot conclude that there are no provable facts under which Diamond's specific restraint of certain potential customers would be enforceable.

¶41    To begin, while we do not consider for its substance the affidavit of the Diamond officer submitted on a motion to dismiss, it illustrates the kind of possibly undisputed evidence that Diamond might, in theory, offer on summary judgment or to a fact finder at trial.  The officer's averments suggest one way in which Diamond might be able to prove facts showing that its potential customers restraint is not significant.  According to the averments, there are only two customers for whom Diamond prepared a written proposal and to whom Godina was "introduced as possibly performing services" who did not go on to become actual customers.  Depending on how the factual record might develop, this may

not present a harsh or oppressive restraint on Godina. Case law illustrates how such considerations are relevant to the total circumstances bearing on a covenant's enforceability. *See Techworks*, 318 Wis. 2d 488, ¶11 (weighing in favor of reasonableness the facts that, within the employer's sales region, there were a relatively small number of customers placed out of bounds and a relatively large number of unrestricted, potential customers). Further, while this empirical consideration is not specifically alleged in the complaint, Diamond's allegations do contain the covenant language, which qualifies its reach through the requirements of a written proposal and the introduction of Godina to the customer. These qualifiers themselves limit the number of potential customers affected by the covenant. And, to repeat, Godina makes no effort to address what reasonable inferences can be drawn from the complaint.

¶42     Godina argues that Diamond's reliance on the officer's affidavit is part of an attempt to enforce an unreasonable covenant only to a reasonable extent or to effectively rewrite the unambiguous terms of the covenant using the officer's subjective interpretations, neither of which is permitted under the case law. *See Lanning*, 371 Wis. 2d 696, ¶19, (explaining that the reasonableness of a covenant is based on its plain language and it "is not reasonable and enforceable simply because the employer enforces it in a reasonable manner"). Specifically, Godina points to averments that apparently consist of subjective interpretations of the meaning of phrases used in the covenant, such as "written proposal" and "introduced as possibly performing services for" a potential customer "[i]n the context of" Godina's job duties. However, Godina fails to show that the officer's averments, or similar evidence that might be presented following remand, could not be relevant to establishing the totality of the circumstances to which the unambiguous terms of the covenant apply. More concretely, Godina does not

explain why it would not be relevant if, for example, there is evidence that (as the officer averred) the only times Diamond introduced Godina to a potential customer was when Diamond had Godina personally prepare a written proposal for that customer.[6]  Similarly, as noted, case law teaches that the "total circumstances" relevant to evaluating a covenant can include weighing the reach of its unambiguous terms in empirical terms.

¶43    Further, at this stage of the proceedings we lack evidence regarding the level of investment that Diamond made at pertinent times in submitting written proposals and "introducing" Godina to potential customers.  This could be relevant to Diamond's potential vulnerability created by Godina being able to solicit those customers.  On a related note, evidence regarding Godina's role in the preparation and presentation of written proposals to potential customers could support the reasonableness of concerns by Diamond that are inferable from the complaint.

¶44    More specifically, Diamond could potentially support the reasonableness of its concerns with evidence that Godina gained an unfair advantage in attracting "potential customers" using knowledge gained from his work for Diamond to the detriment of Diamond's potential second- or subsequent-efforts to resolicit the business of potential customers.  Perhaps Diamond could show that, based on knowledge that Godina obtained about these customers through his employment with Diamond, he would provide competition for those

---

[6] Perhaps Godina could effectively counter by challenging averments in the affidavit or by pointing to evidence showing that the allegedly well-defined, small number of customers is significant in a way that is relevant under the *Lakeside Oil* test.  But either way, competing evidence and the reasonable inferences arising from the evidence are not properly resolved on a motion to dismiss.

customers that was different from the type of competition that would be expected from a stranger. *See **Lakeside Oil Co.***, 8 Wis. 2d at 163 ("An employer is not entitled to be protected against legitimate and ordinary competition of the type that a stranger could give."). Further, Diamond's potential interest in solicited customers at least resembles the interest of winning back former customers who took their business elsewhere, which was deemed protectable in ***Star Direct***. *See **Star Direct***, 319 Wis. 2d 274, ¶40. The complaint here contains an allegation, unaddressed by Godina, that he had access to information with which he could gain a competitive advantage over Diamond in attempting to do business with such customers.

¶45     Godina argues that restrictive covenants which use customer-based territories may not, under any circumstances, cover merely potential customers, those with whom the former employer was never able to do any business. In support, he cites an unpublished opinion of this court in which we concluded that a territorial limitation based on merely potential customers was unenforceable. *See **Karsten v. Terra Eng'g & Constr. Corp.***, No. 2016AP2025, unpublished slip op. (WI App Sept. 7, 2017). However, ***Karsten*** is distinguishable in that the territorial limit at issue in that case was much broader than the potential customer restraint here: the former employee could not do the same kind of work he had done for the former employer in *any U.S. state or Canadian province* in which the

23

employer had solicited even one potential customer "briefly and unsuccessfully." *See id.*, ¶42.[7]

¶46    Godina may also mean to rely on a federal case, cited with approval in *Karsten*, as persuasive authority for a per se rule invalidating covenants based on territories defined to consist of customers whom the former employee had unsuccessfully solicited, but with whom neither the employee nor the employer had any further dealings.  *See Sysco Food Servs. of E. Wis., LLC v. Ziccarelli*, 445 F. Supp. 2d 1039 (E.D. Wis. 2006) (granting motion to dismiss based on Wis. Stat. § 103.465 as to claims seeking to enforce restrictive covenant). Specifically, in *Sysco*, the district court concluded that this covenant violated four of five *Lakeside Oil* requirements.  *See id.* at 1048-50 (reviewing covenant precluding solicitation or providing certain services "[i]n any area" to a customer "from whom Employee solicited" or "otherwise dealt with on behalf" of the employer).  Some of the discussion in *Sysco* persuasively lays out the potential detriments to free trade posed by a noncompete covenant with a territory defined in this manner.  Such never-served customers might even "include long-standing … customers" of a competitor who newly employs the former employee.  *See id.* at 1049.  That result certainly implicates the overall purpose of § 103.465 to promote the public interest of limiting the restraint of trade through the regulation of applicable covenants.  *See Heyde Cos., Inc. v. Dove Healthcare, LLC*, 2002 WI

---

[7] We further note that *Karsten* is a summary judgment case. *See Karsten v. Terra Eng'g & Constr. Corp.*, No. 2016AP2025, unpublished slip op. ¶1 (WI App Sept. 7, 2017).  Although the court did not discuss the record in critiquing the covenant at issue, presumably the former employer had an opportunity to offer evidence that could support an argument that it had legitimate business interests justifying the covenant's breadth, or that could show that its reach was mitigated under the circumstances. *See id.*, ¶¶43-45.

131, ¶¶13, 15, 258 Wis. 2d 28, 654 N.W.2d 830. But we conclude that the analysis in *Sysco* is not persuasive in suggesting that the noncompete covenant here is unenforceable regardless of what Diamond might be able to show on summary judgment or at trial.

¶47     If a summary judgment record had been developed in *Sysco*, perhaps the former employer could have submitted undisputed evidence that the number of solicited but not served customers was small, making it less likely that the noncompete covenant there could be unfairly used against former employees seeking to work with competitors of the former employer. More to the point, the covenant here places some concrete limits on the kinds of solicitations that count by requiring a written proposal and the introduction of Godina. Further, as noted, using the affidavit of Diamond's officer as an illustration, the number of customers at issue might be shown to be well defined and small. *Cf. Sysco*, 445 F. Supp. 2d at 1051-52 (reasoning that there was no set of facts provable by employer under which it could enforce noncompete covenant based on an unqualified solicitation provision against former salespersons, whose jobs involved soliciting new customers).

## III. Confidentiality Covenant

¶48     The parties agree that the confidentiality covenant, like the noncompete covenant, must pass muster under WIS. STAT. § 103.465, as interpreted in the case law. *See **Tatge v. Chambers & Owen, Inc.***, 219 Wis. 2d 99, 111-12, 579 N.W.2d 217 (1998) (concluding that § 103.465 applies to nondisclosure provision); *see also **Heyde***, 258 Wis. 2d 28, ¶13 ("§ 103.465 essentially deals with restraint of trade and … the statute applies regardless of whether a restriction is labeled a 'non-disclosure' provision or a 'covenant not to

compete'"). As with the noncompete covenant, the parties dispute whether the confidentiality covenant is unenforceable based on its terms. We conclude that, given the broad sweep of information covered by terms of the covenant that we discuss in detail, the covenant is per se invalid because Diamond could not adduce any set of facts inferable from the complaint that would establish that the restraint barring the sharing of such information is reasonably necessary to protect Diamond.

¶49 In addition to the standards noted above, the following case law provides legal context for our application of WIS. STAT. § 103.465 to the confidentiality covenant. Of particular note is our supreme court's analysis of a confidentiality covenant in *Star Direct*, in which the court upheld the covenant as reasonable on summary judgment review.[8] *Star Direct*, 319 Wis. 2d 274, ¶¶5, 11, 64. Although the pertinent covenant in *Star Direct* involved broad phrases such as "any information" and "including but not limited to," the court reasoned that these phrases were given a narrower meaning by a list of examples in which each listed item was defined as being of a "proprietary nature." *See id.*, ¶¶11, 63. The court explained that the "confidential nature of the itemized examples" supported only one reasonable construction, namely, that the former employee was prohibited from "use of confidential information of the type identified in the examples." *Id.*,

---

[8] The covenant at issue in *Star Direct* lasted 24 months following termination and applied to prohibit disclosure of "any information or knowledge, known, disclosed or otherwise obtained by [the employee] during his employment by [the employer]." *Star Direct*, 319 Wis. 2d 274, ¶11. This included (but was "not limited to") "information and knowledge conceived, discovered or developed by" the employer, the employer's "proprietary products or procedures," "trade secrets," "customer lists," or "marketing techniques which are not generally known in the business community, and which relate to the [employer's] business … or are in the nature of trade or business secrets." *See id.* The covenant also prohibited disclosure of mailing lists of the employer's customers and pricing information. *Id.*

¶63. Specifically, the type of information at issue was "of a confidential and sensitive nature [such] that, if made public or used by [the former employee, it] would be deleterious to Star Direct's business." *Id.*

¶50 Related to this last point, our supreme court stated in *Rollins* that, in that case, the following category of information was indisputably "a proper subject of protection" under restrictive covenants: information "about customer names, policy data, and expiration dates which was not limited to those clients" whom a former employee "personally" served, but to whom the employee had had access when employed. *See Rollins*, 101 Wis. 2d at 468-69. Stated in terms of the *Lakeside Oil* test, the protection of such information can, at least in some cases, be a "protectable interest," or, in the terms of WIS. STAT. § 103.465, be "reasonably necessary for the protection of the employer." *See Star Direct*, 319 Wis. 2d 274, ¶¶20, 47, 64.

¶51 With these additional points of legal context as background, we now summarize the confidentiality covenant here. It begins with an introductory paragraph explaining that Godina acknowledges that his employment with Diamond would involve using, "acquiring or adding to information which is confidential to [Diamond] (the "Confidential Information")," and that "the Confidential Information is the exclusive property of [Diamond]." This introduction is followed by four paragraphs detailing what is "included" and is "not included" within the meaning of "Confidential Information."

¶52 The "included" paragraphs state:

> The Confidential Information will include *all data and information relating to the business and management of the Employer*, including but not limited to, *proprietary* and trade secret technology and accounting records to which access is obtained by the Employee, including Work

> Product, Computer Software, Other Proprietary Data, Business Operations, Marketing and Development Operations, and Customer Information.
>
> The Confidential Information will also include any information that has been disclosed by a third party to the Employer and is governed by a non-disclosure agreement entered into between that third party and the Employer.

(Emphasis added.) As addressed below, the six capitalized terms listed at the end of the first "included" paragraph are defined later in the employment contract.

¶53 To summarize the "not included" paragraphs, the first lists multiple independent ways that information becomes non-confidential because the source of the information is in some manner external to, or at least not exclusive to, the employer's business operations, including what is "generally known in [Diamond's] industry."[9] The second paragraph focuses on information generated by the employee, but only when specified elements are each met. These elements

---

[9] The first "not included" paragraph provides that "The Confidential Information will not include information that:"

> a. Is generally known in the industry of the Employer;
>
> b. Is now or subsequently becomes generally available to the public through no wrongful act of the Employee;
>
> c. Was rightfully in the possession of the Employee prior to the disclosure to the Employee by the Employer;
>
> d. Is independently created by the Employee without direct or indirect use of the Confidential Information; or
>
> e. The Employee rightfully obtains from a third party who has the right to transfer or disclose it.

all relate to the employee not using employer resources, including "company time" to generate the information.[10]

¶54    Moving on from the "included" and "not included" paragraphs, four paragraphs address the employee's "duties and obligations concerning confidential information" (capitalization omitted). These include the detail that the confidentiality covenant has a two-year time limitation. The parties do not argue that this time limitation contributes to our analysis under WIS. STAT. § 103.465 at this stage of proceedings, nor does either suggest that there is anything significant about other details from the duties and obligations portion of the covenant. However, the following features of this passage are relevant as context to assessing its reasonableness, specifically regarding the scope of information to which it applies. These terms demonstrate how the covenant restricts former employees from sharing that information. Godina "agrees not to divulge, reveal, report or use, for any purpose, any of the Confidential Information which the Employee has obtained or which was disclosed to the Employee by the Employer

---

[10] The second "not included" paragraph provides that "The Confidential Information will also not include anything developed or produced by the Employee during the Employee's term of employment with the Employer." This "include[es] but [is] not limited to any intellectual property, process, design, development, creation, research, invention, know-how, trade name, trade-mark or copyright" that:

    a.   Was developed without the use of equipment, supplies, facility or Confidential Information of the Employer;

    b.   Was developed entirely on the Employee's own time;

    c.   Does not result from any work performed by the Employee for the Employer; and

    d.   Does not relate to any actual or reasonably anticipated business opportunity of the Employer.

as a result of the Employee's employment with the Employer." Further, he must "immediately notify the Employer and take all reasonable steps necessary to retrieve … Confidential Information" that the employee "lost or improperly disclosed." Godina is liable to Diamond for damages, in addition to "costs, including reasonable attorneys' fees and expenses, resulting from enforcement" of the covenant.

¶55 Having summarized its essential features, we pause to note that, compared to the confidentiality agreement in ***Star Direct***, the confidentiality covenant here has a complex structure. It has a multi-faceted definition of what is "confidential." This creates many different restraints and, under WIS. STAT. § 103.465, Diamond must show that each is enforceable. *See **Star Direct***, 319 Wis. 2d 274, ¶59 (reviewing a covenant that consisted of one "18-line sentence containing 20 sub-clauses separated by 19 commas" and that was "not a model of clarity").

¶56 Because the entire confidentiality covenant is unenforceable if any one of its restraints is unenforceable, we narrow our focus to one aspect of the covenant highlighted by Godina. As we now explain, we agree with him that this aspect is unenforceable, rendering the covenant as a whole unenforceable.

¶57 Godina argues that the confidentiality covenant is per se invalid based on the first paragraph, which defines "Confidential Information."[11] At the

---

[11] We make one assumption that would be an exception to the reasoning in ***Holsen*** and ***Rollins*** that we note above, establishing the necessity of geographical or customer-based territorial limitations. We assume without deciding that, in the context of covenants that restrict the disclosure of information in particular, the lack of a geographical limitation is not dispositive, even without the use of a customer-based "territory" instead. The parties do not address this topic. This is an interesting issue for the digital age, since of course information in many formats

(continued)

most general level, this paragraph defines "Confidential Information" as "all data and information relating to the business and management of the Employer." On its face, this includes all information related to Diamond, whether reasonably protectable or not. However, the next clause refines the definition of "all data and information" to include "proprietary and trade secret technology and accounting records to which access is obtained by the Employee."[12] To this point in the one-sentence paragraph, then, the categories of information at issue are "sensitive" in that they fit at least partially within the list of information upheld in *Star Direct*. *See id.*, ¶¶59, 64 (enumerated examples included "'proprietary products or procedures,'" and "trade secrets").[13] However, the first "included" paragraph continues with the list of defined terms, which as we now explain, illustrate that "all data and information" is far more expansive than that which is proprietary or secret—unreasonably so.

---

is now very cheaply and rapidly transmitted around the globe. We note for context that in *Star Direct*, our supreme court was not presented with the arguments regarding the lack of a territorial limitation in the confidentiality covenant. *Star Direct*, 319 Wis. 2d 274, ¶61; *but see Gary Van Zeeland Talent, Inc. v. Sandas*, 84 Wis. 2d 202, 218, 267 N.W.2d 242 (1978) (noting that restraints on trade "may be unreasonable by a limitation that is overbroad in terms of geographic area or time" in the context of concluding that ban on disclosing customer lists lacking any geographic or time restraint was an unreasonable restraint).

[12] *Star Direct* instructs that this can be so even though this refinement is introduced by the phrase "including but not limited to." *See Star Direct*, 319 Wis. 2d 274, ¶¶11, 63 ("the confidential nature of the itemized examples indicates the true intent of the clause" to prohibit "use of confidential information of the type identified in the examples—information of a confidential and sensitive nature"). That is, one is not free to imagine including other types of information or data that would not fit the pattern of what is already explicit in the list.

[13] Isolating the "accounting records" part of the phrase "proprietary and trade secret technology and accounting records to which access is obtained by the Employee," Godina does not argue that Diamond does not generally have a protectable interest in preventing the disclosure of any record that could reasonably be considered an accounting record. We express no view on that topic.

¶58    Unlike the examples noted in *Star Direct*, the defined terms listed here do not all fit a pattern of protectable information. *See id.*, ¶63 ("*All* of the enumerated examples of protected information … are of a proprietary nature." (emphasis added)).   Indeed, they extend in at least one instance to a level of breadth that includes all internal-to-the-business information.   Specifically, the covenant defines "Business Operations" as follows:

> "Business Operations" means operational information, including but not limited to, internal personnel and financial information, vendor names and other vendor information (including vendor characteristics, services and agreements) purchasing and internal cost information, internal services and operational manuals, and *the manner and methods of conducting the Employer's business*.

(Emphasis added.)   We agree with Godina and the circuit court that the phrase "manner and methods of conducting [Diamond's] business" is virtually without limit.   If enforceable, it would make Godina liable for sharing any detail of Diamond's workplace and operations, even the most mundane minutiae.

¶59    The prohibition against disclosing vendor "characteristics" is also extremely broad.   Diamond argues that, in the context of the "Business Operations" definition as a whole, "vendors" could reasonably mean only those vendors with whom Diamond has specifically worked (and not just any vendor).   But even accepting that point, the restraint on divulging vendor "characteristics" would seem to prevent Godina from even making general comments regarding the

kind of office products that Diamond bought from vendors such as, for example, the kind of pens purchased for office use.[14]

¶60   It is true that, as we have noted, the complaint makes the general allegation that Godina had access to information while working at Diamond that he could use to gain a competitive advantage over Diamond. Yet none of the allegations in Diamond's complaint even begin to suggest what circumstances Diamond could prove to show that such information includes all "manner and methods" of how it conducted its business, or that it includes all "vendor characteristics." Further, Diamond does not now argue otherwise. We conclude that such reach is per se invalid. Diamond fails to suggest any provable facts, including any fact inferable from the allegations in the complaint, that it could rely on to justify the "manner and methods" restraint or the "vendor characteristics" restraint.

¶61   Diamond does not advance an argument that, interpreting the confidentiality covenant as we do, the covenant's scope is reasonably necessary to protect Diamond, *i.e.*, an argument that the covenant is reasonable as to each restraint that it imposes on Godina. Instead, Diamond urges that this court construe the text of its covenant more narrowly and thus easier to justify as reasonable.

---

[14] As noted, it is enough under WIS. STAT. § 103.465 to affirm the circuit court's ruling regarding the confidentiality covenant to identify one restraint that is unreasonable. Thus, we need not decide whether other aspects of the definition of Business Operations are unreasonable. Nor do we need to consider another defined term, "Customer Information," which Godina argues is unreasonable. We merely observe that, under *Star Direct*, customer lists can be protectable under some circumstances. *See Star Direct*, 319 Wis. 2d 274, ¶¶46-47, 59-64.

¶62    Diamond contends that all of the defined terms listed in the first "included" paragraph are limited in scope by the word "proprietary," as part of the phrase "proprietary and trade secret technology." It notes that one dictionary definition of "proprietary information" is "information in which the owner has a protectable interest." *Proprietary Information*, BLACK'S LAW DICTIONARY (11th ed. 2019). Diamond could also point to the fact that elsewhere the covenant states that "the Confidential Information is of a proprietary and confidential nature." However, we conclude that Diamond's construction of the "included" paragraph is not reasonable.

¶63    The only reasonable interpretation is that this paragraph uses the list of defined terms, according to their plain meaning, to define what kinds of information the covenant asserts are proprietary, as opposed to interpreting the term "proprietary" as qualifying the scope of the defined terms that follow. Put in terms of the dictionary entry for "proprietary" to which Diamond directs us, the list of defined category-examples defines what the covenant asserts is "information in which the owner has a protectable interest." Were the word "proprietary" intended to modify all that comes after it, the "included" paragraph would be structured differently. One simple example would be to have placed restraints on "all proprietary information" related to Diamond, instead of using the unqualified "all information."

¶64    Beyond Diamond's argument based on the term "proprietary," it may mean to argue that the "not included" paragraphs narrow the reach of the "included" paragraphs to a degree that renders them reasonable. More specifically, Diamond apparently argues that phrases such as "manner and methods of conducting … business" and "vendor characteristics" are not all encompassing because the covenant makes an exception for information known

throughout Diamond's industry. This argument rests on the implicit notion that when information falls within the overlap between the "included" and "not included" paragraphs, the "not included" paragraph controls. Accepting this premise, the "not included" paragraphs would have mitigating effects by narrowing the scope of "Confidential Information." It remains, however, that the covenant, by its unambiguous terms, restricts the use of information for which Diamond could have no protectable interest, because the "not included" provisions do not cover all extreme aspects of the "included" paragraphs that we have discussed, only some of them.[15] To return to an earlier illustration, we see no possibility that Diamond could prove that all of the information, including the most mundane minutiae, evoked by the "manner and methods" restraint would be, for example, known throughout the industry.

## IV. Modification Provision

¶65 Because we conclude that Diamond might be able to show that the noncompete covenant is enforceable under WIS. STAT. § 103.465, we must address an alternative argument made by Godina. Godina argues that the modification provision, separate from the covenants at issue in this appeal but part of the same

---

[15] We note that the confidentiality covenant does not explicitly address how to resolve potential conflicts between the "included" paragraphs and "not included" paragraphs in defining "Confidential Information." For example, the covenant leaves unanswered how to classify the "manner and methods" by which Diamond conducts its business ("included" in "Confidential Information") that is known throughout the industry ("not included" in "Confidential Information"). We assume without deciding, in Diamond's favor, that this ambiguity would be resolved to mean that the "not included" paragraph applies, thus narrowing the scope of the covenant to a degree. *See Heyde Cos., Inc. v. Dove Healthcare, LLC*, 2002 WI 131, ¶16, 258 Wis. 2d 28, 654 N.W.2d 830 (one canon of construction applicable to restrictive covenants is that they "will not be construed to extend beyond their proper import or further than the language of the contract absolutely requires"). But we explain in the text why this is not sufficient.

contract, modifies the covenants in a way that renders both per se invalid, even if either could be considered reasonable. We reject this argument as an alternative basis to affirm the circuit court's ruling regarding the noncompete covenant.

¶66 The modification provision of the contract, entitled "Severability" provides,

> if any term, covenant, condition or provision of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, it is the parties' intent that such provision be changed in scope by the court only to the extent deemed necessary by that court to render the provision reasonable and enforceable and the remainder of the provisions of this Agreement will in no way be affected, impaired or invalidated as a result.

¶67 If applied to the covenants here, the modification provision would be contrary to the second sentence of WIS. STAT. § 103.465. To repeat, the statute mandates that if a restrictive covenant is unreasonable as to any restraint imposed, then the entirety of the covenant is rendered unenforceable. *See* § 103.465; *Streiff v. American Fam. Mut. Ins. Co.*, 118 Wis. 2d 602, 608, 348 N.W.2d 505 (1984) (noting enactment of § 103.465 superseded practice of judicially modifying unreasonable covenants to give effect to those covenants to a reasonable extent).

¶68 Given that the modification provision is contrary to WIS. STAT. § 103.465, it could have no effect here. *See Baierl v. McTaggart*, 2001 WI 107, ¶¶12, 18-21, 245 Wis. 2d 632, 629 N.W.2d 277 (contract provision "may give way" to a "controlling statute"); *Glendale Pro. Policemen's Ass'n v. City of Glendale*, 83 Wis. 2d 90, 102, 264 N.W.2d 594 (1978) (provision of a labor contract may be "void" based on a violation of a statute). As applied here, a restrictive covenant is unenforceable in its entirety to the extent that it imposes any restraint that is unreasonable. By contrast, to the extent that a covenant passes

muster under § 103.465, the modification provision has no effect under its own terms. Thus, if a more developed record reveals that the confidentiality covenant is enforceable under § 103.465, the modification provision could not apply to it in any case.

¶69    Godina argues that the modification provision here is "intertwined" with the restrictive covenants. The result, he contends, is that the unenforceability of the modification provision renders the covenants unenforceable. Godina emphasizes that the modification provision by its terms is explicitly tied to the other provisions in the contract—including the restrictive covenants. He notes that the provision applies only when another term in the contract is deemed unenforceable in some respect and the effect of the modification provision "is dependent on" what the unenforceable terms "state in the first instance." However, we agree with Diamond on two key points.

¶70    First, once the modification provision is deemed inapplicable to the covenants under WIS. STAT. § 103.465, this effectively strikes the modification provision from the contract; it is a nullity as applied to any attempt to enforce a restrictive covenant.

¶71    Second, when that is done, the restrictive covenants are understandable on their own terms and independently enforceable to the extent allowable under the statute. *See Star Direct*, 319 Wis. 2d 274, ¶78 ("The foundational inquiry for determining whether a covenant is divisible is whether, if the unreasonable portion is stricken, the other provision or provisions may be understood and independently enforced.").

¶72    Godina purports to rely on our decision in *H&R Block Eastern Enterprises v. Swenson*, 2008 WI App 3, 307 Wis. 2d 390, 745 N.W.2d 421, but

that case does not support his argument. The issue in **H&R Block** was whether the time period covered in a restrictive covenant was reasonable, in light of the fact that it could be extended under certain circumstances. *See id.*, ¶¶12-24. The court explained that the covenant was unreasonable because the extension provisions were ambiguous, rendering the length of the covenant indeterminate. *See id.*, ¶¶19-20. The facts of **H&R Block** superficially resemble those here in that both cases involve provisions of a contract that purport to modify the terms of the covenants at issue. However, the focus in **H&R Block** was on whether the time limitation of the restrictive covenant could be considered reasonable given that it could be extended in indeterminate ways. *See id.* In that sense, the case was an application of the first sentence of WIS. STAT. § 103.465, regarding when a covenant is reasonable and enforceable, not the second sentence, explaining the effect of even one unreasonable restraint within a covenant.

¶73     Godina contends that the inclusion of the modification provisions is unreasonable because it would create doubt for at least some employees who suspect that one portion of the noncompete covenant is unreasonable. The concept is that it could be unclear to such an employee, based on the modification provision, whether a portion of a covenant's unreasonable restraints could still be enforceable. For example, an employee such as Godina might suspect that the noncompete covenant is unenforceable to its full extent because it is overbroad in defining the customers placed off limits to the employee, but might rely on the modification provision to think that some lesser restraint on his contacts with customers would be considered reasonable and thus enforceable. Under this view, despite the fact that the modification provision is itself unenforceable, the doubt it could create weighs against the reasonableness of the restrictive covenants based on an *in terrorem* effect. *See* **Streiff**, 118 Wis. 2d at 614 (explaining that "[a]

principal argument" for the prohibition in WIS. STAT. § 103.465 on enforcing the reasonable extent of an unreasonable covenant "is that the employer can fashion ominous covenants which affect the mobility of employees because of their *in terrorem* effect on employees"); ***Milosch***, 247 Wis. 2d 172, ¶19 n.5 ("*in terrorem*" means "'[b]y way of threat; as a warning'" (quoted source omitted)).

¶74　　The problem with this argument is that Godina does not support the proposition that WIS. STAT. § 103.465 is to be applied to a provision that is not itself a covenant (or indivisible from one), such as the modification provision here, based on the assumption that employees would not be aware that § 103.465 precludes judicial modification of unreasonable covenants. As noted, the remedy provided for in § 103.465 is unambiguous: the covenant containing an unreasonable restraint, and any terms that cannot be separated from the covenant, are rendered void.

## CONCLUSION

¶75　　For all of these reasons, we reverse the circuit court's dismissal of Diamond's claims based on the noncompete covenant and affirm the court's dismissal of Diamond's claims based on the confidentiality covenant.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded.